WATERFORD CONDOMINIUM ASSOCIATION *et al.*, Plaintiffs-Appellants, *v.* DUNBAR CORPORATION *et al.*, Defendants.—(WIESINGER-HOLLAND, LTD., *et al.*, Defendants-Appellees.)

First District (4th Division)    No. 81-505

Opinion filed February 4, 1982.

Terence J. Tyksinski, of Chicago, for appellants.

James E. Betke and N. Rosie Rosenbaum, both of McDermott, Will & Emery, and Thomas M. Crisham, Stanley J. Davidson, and Laurie A. Siwek, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, both of Chicago, for appellees.

JUSTICE ROMITI delivered the opinion of the court:

The plaintiffs Waterford Condominium Association as agent and Meyer Karch individually and in a representative capacity on behalf of initial purchasers of units in the Waterford Condominium filed a lawsuit against various persons connected with the building of the condominium in the early 1970's. (Meyer Karch purchased his unit on July 29, 1973.) The suit was filed in 1977 against Dunbar Corporation (Dunbar) and Dunbar Constructors, Inc. (Constructors), the developers, contractors and sellers of the condominium. On May 15, 1980, plaintiffs filed an amended complaint naming for the first time seven companies which were involved in certain phases of the design and construction of the building. Among them were the two defendant-appellees involved in this appeal (herein-after referred to as defendants). The two are Wiesinger-Holland, Ltd., and Gamze-Korobkin-Caloger, Inc. Wiesinger allegedly was retained by Macsai as its agent to furnish structural engineering services in connection with the planning and construction of the Waterford Condominium. (Allegedly Macsai was retained by Dunbar and Constructors to furnish architectural services.) Gamze allegedly was retained by Dunbar and Constructors as their agent to furnish mechanical, heating and ventilation engineering services. The complaint was based in (1) breach of contract, (2) breach of implied warranty of habitability, (3) misrepresentation and fraud. There was no claim for negligence.

The trial court granted defendants' motion to dismiss both for failure to state a cause of action and because the claim in fraud was barred by the statute of limitations. We affirm.

## I

In the count for breach of contract plaintiffs alleged the making of the contract between Macsai and Wiesinger, and between Dunbar and Gamze (both of which contracts were attached to the complaint), and further alleged that by the terms of the agreements defendants were impliedly bound to perform the services in a professionally good and workmanlike manner, that Waterford Condominium was deficient in many specified respects, and that it was known to and intended by Dunbar and the other defendants as parties to the agreements that the construction required was for the benefit of and sole use of the condominium unit purchasers and Waterford Condominium Association.

■■ The contracts entered into by the defendants were not with the plaintiffs but with the developer and architect respectively. It is well settled in Illinois that, absent privity of contract, a purchaser or owner of real property has no cause of action against a defendant for breach of contract unless he can demonstrate that the contractual obligations and duties were undertaken for his direct benefit. (*Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 421 N.E.2d 182; *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656; *Midwest Concrete Products Co.. v. La Salle National Bank* (1981), 94 Ill. App. 3d 394, 418 N.E.2d 988.) It is not enough that the parties to the contract know, expect or even intend that others will benefit from the construction of the building in that they will be users of it. The contract must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively make this intention clear. (*Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 178 N.E. 498.) As this court recently stated in *Midwest Concrete Products Co. v. La Salle National Bank* (1981), 94 Ill. App. 3d 394, 396-97, 418 N.E.2d 988, 990;

> "In making this determination, it must appear from the language of the contract when properly construed that the contract was made for the *direct* benefit of the third person and that the benefit was not merely incidental. (*Young v. General Insurance Company of America* (1975), 33 Ill. App. 3d 119, 337 N.E.2d 739.) It has been observed that:
>
>> '[I]t is not sufficient that the performance of the [contract] may benefit a third person, * * * it must have been entered into for his benefit, or at least such benefit must be the direct result of performance and so within the contemplation of the parties. * * * [I]nasmuch as people usually stipulate for themselves, and not for third persons, a strong presumption obtains in any given case that such was their intention, and that the implication to overcome that presumption must be so strong as to amount practically to an

express declaration.' (17 Am. Jur. 2d *Contracts* §304, at 729-30 (1964).)

The terms of the contract are controlling with respect to the rights of a third-party beneficiary. Liability cannot be extended beyond the terms of the contract merely on the ground that the situation and circumstances of the parties justify further liability. *Carson Pirie Scott & Co. v. W. J. Parrett.*"

The contracts entered into by the two defendants here were the typical form contracts usually entered into in such situations. The defendants agreed to perform for the owner and for the architect respectively. There was no language inserted into the contracts providing that defendants were acting for the direct benefit of the condominium owners, either individually or as a class.

■■ Plaintiffs argue that defendants should be held responsible because it was contemplated that members of the public would enter and use the dwellings as owners, guests, invitees or licensees and in effect defendants were simply assuming Dunbar's responsibilities to cause the building to be completed in accordance with the specifications. This argument however goes to defendants' liability in tort for negligently failing to perform in a workmanlike manner. (See *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656.) We believe plaintiffs' claim is governed by the recent cases of *Altevogt v. Brinkoetter* (1981), 85 Ill. 24, 44, 421 N.E.2d 182, and *Midwest Concrete Products Co. v. La Salle National Bank* (1981), 94 Ill. App. 3d 394, 418 N.E.2d 988, both of which bar any recovery in contract.

In *Altevogt*, Brinkoetter contracted with Hinton for the latter to build a house on the former's lot. Brinkoetter also entered into a contract to sell the premises to the plaintiff Altevogt. Altevogt attempted to sue Hinton for breach of a warranty to build the house in a reasonably workmanlike manner. The supreme court held that even if Hinton knew the house was to be sold to a third party, the plaintiff was not a direct beneficiary, quoting illustration 18 of the Restatement (Second) of Contracts §133 (1981):

"A contracts to erect a building for C. B then contracts with A to supply lumber needed for the building. C is an incidental beneficiary of B's promise, and B is an incidental beneficiary of C's promise to pay A for the building."

The supreme court went on to say that where, as in the present case, the plaintiffs were not the owners who contracted for the construction of the buiding but subsequent purchasers, *Rozny v. Marnul* controlled and plaintiffs could not maintain an action against Hinton as direct beneficiaries.

In *Midwest Concrete Products* the user of the premises sought to recover damages against a subcontractor. This court held that the user

was not a direct beneficiary and could not recover even though the subcontract was made subject to the terms of the general contract which provided for liquidated damages for every day the user was delayed in opening its business.

## II

■■ For the same reasons the plaintiffs' count seeking recovery from defendants for breach of warranty of habitability must fall. Illinois recognizes that a builder-vendor (*Petersen v. Hubscham Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154), or developer-vendor (*Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 410 N.E.2d 902, *appeal denied* (1981), 82 Ill. 2d 588), who sells a newly constructed residence impliedly warrants that the residence is reasonably suited for its intended use. This is because the builder or developer was in the best position to know who could perform the work adequately and see that it was properly done. But the warranty exists between builder (developer)-vendors and their vendees (*Kramp v. Showcase Builders* (1981), 97 Ill. App. 3d 17, 422 N.E.2d 958), and does not apply where, as here, the defendants are not builder (developer)-vendors but merely are employed by the builder. (*Wiersema v. Workman Plumbing, Heating & Cooling, Inc.* (1980), 87 Ill. App. 3d 535, 409 N.E.2d 159.) Plaintiffs remedy for breach of warranty of habitability is against the developers and sellers.

■■ Plaintiffs for the first time in their brief on appeal suggest that defendants are liable as joint venturers with Dunbar. (See *Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 410 N.E.2d 902, *appeal denied* (1981), 82 Ill. 2d 588.) Plaintiffs in their complaint alleged that defendants acted *as agents*, not as joint venturers. Having failed to raise the issue below, they cannot raise it here. *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417; *Marynczak v. D & L Transport Co.* (1981), 94 Ill. App. 3d 381, 418 N.E.2d 972.

## III

In the third count of their complaint, plaintiffs alleged that "prior to the purchase of units and during negotiations for the purchase of units, defendants and their agents routinely represented to unit purchasers by way of advertising, brochures, plans, specifications, folders and other written advertisement as to the type, nature and quality of the construction of the Waterford Condominium and the material used; the unit purchasers were so informed that the Waterford Condominium was built in a good and workmanlike manner, that the materials used were of excellent and proper quality, and the building constructed in accordance with approved plans, specifications and building code requirements of the City of Chicago"; that defendants made such representations with the

intention that unit purchasers would act on such representations; and did so knowing them to be false and fraudulent in that the condominium was built in a poor and unworkmanlike manner.

■■ We agree with the trial court that the complaint failed to state a cause of action in fraud in that it failed to set out the fraudulent misrepresentations with the specificity, particularity and certainty required. (*Goetz v. Avildsen Tool & Machines, Inc.* (1980), 82 Ill. App. 3d 1054, 403 N.E.2d 555, *appeal denied* (1980), 81 Ill. 2d 591; *Younger v. Revelle* (1979), 78 Ill. App. 3d 1, 397 N.E.2d 221, *appeal denied* (1980), 79 Ill. 2d 634.) A person has not properly pled a cause of action for fraud unless he has set forth with specificity what the representations were, when they were made, by whom they were made, and to whom they were made. (*St. Joseph Data Service, Inc. v. Thomas Jefferson Life Insurance Co.* (1979), 73 Ill. App. 3d 935, 393 N.E.2d 611, *appeal denied* (1979), 79 Ill. 2d 624.) Furthermore, the cause of action is based on a written document, it is necessary to set forth the document or the relevant portion of it in the pleadings or attach it to the pleadings. Ill. Rev. Stat. 1979, ch. 110, par. 36.

■■ In addition, we agree with the trial court that this claim was barred by the five-year statute of limitations. The statements were alleged to have been made before the sale of the units, that is, before spring of 1973. But suit was not brought against these defendants until spring of 1980, over seven years after the representation was allegedly made. Thus, the claim was properly dismissed since it appeared from the face of the complaint that the action was not commenced within the time limited by law. *Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 421 N.E.2d 182.

■■ Plaintiffs in their brief contend that there is a question of fact as to when plaintiffs discovered the fraud. However it is incumbent upon a plaintiff seeking to take advantage of the discovery rule to plead in the complaint that the fraud remained undiscovered. (*Auster v. Keck* (1976), 63 Ill. 2d 485, 349 N.E.2d 20; *Pratt v. Sears Roebuck & Co.* (1979), 71 Ill. App. 3d 825, 390 N.E.2d 471; *Chicago Park District v. Kenroy, Inc.* (1978), 58 Ill. App. 3d 879, 374 N.E.2d 670, *aff'd in part, rev'd in part on other grounds* (1980), 78 Ill. 2d 555, 402 N.E.2d 181.) This plaintiffs failed to do. Accordingly, as a matter of law, the discovery rule is not applicable.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

JIGANTI and LINN, JJ., concur.