WASHINGTON COURTE CONDOMINIUM ASSOCIATION-FOUR *et al.*, Plaintiffs-Appellees, v. WASHINGTON-GOLF CORPORATION *et al.*, Defendants (Corra Plumbing and Weather Shield Manufacturing, Inc., Defendants-Appellants).

First District (1st Division) Nos. 85—830, 85—1084 cons.

Opinion filed December 1, 1986.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Tobin, Marie A. Monahan, and Stephen R. Ayres, of counsel), for appellants.

Webber & Thies, P.C., and Masuda, Funai, Eifert & Mitchell, Ltd., both of Chicago (Carl M. Webber and Keith W. Groebe, of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

This is a consolidated interlocutory appeal arising out of a 34-count amended complaint filed by plaintiffs, Washington Courte Condominium Association-Four and certain owners of condominium units in Washington Courte Condominium-Four, one of five buildings in the Washington Courte condominium complex located in Niles (Washington Courte), against defendants, Washington-Golf Corporation, general contractor/developer vendor of Washington Courte, and numerous subcontractors, including Corra Plumbing Company (Corra) and Weather Shield Manufacturing, Inc. (Weather Shield). The first interlocutory appeal (No. 85—830), brought by Corra and Weather Shield, results from the trial court's denial of their motions to dismiss those counts which alleged negligence (counts XIV and XXII), and those

which alleged breach of the implied warranty of habitability (counts XXV and XXXIII). Pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308), the trial court granted Corra's and Weather Shield's motions to certify the issues raised by their motions to dismiss. The second interlocutory appeal (No. 85—1084) is brought by plaintiffs and results from the trial court's dismissal of count XXXIV, predicated on the Racketeer Influenced and Corrupt Organizations Act (RICO Act) (18 U.S.C. sec. 1961 *et seq.*).

On appeal, Corra and Weather Shield contend that: (1) the trial court erred in denying their motions to dismiss the negligence counts on the ground that the alleged damages arise in a commercial context and, thus, are recoverable under contract theories only, and (2) the trial court erred in denying their motions to dismiss the warranty-of-habitability counts on the ground that a cause of action for breach of an implied warranty of habitability may not be asserted by a plaintiff/purchaser against a subcontractor where, as here, the general contractor is a viable concern. With respect to the RICO Act appeal, plaintiffs contend that the trial court erred in dismissing the count for lack of subject matter jurisdiction. For the reasons stated below, we reverse that portion of the trial court's order which denied Corra's and Weather Shield's motions to dismiss (No. 85—830) and affirm the dismissal of the RICO Act count (No. 85—1084).

The records below present the following facts pertinent to this consolidated appeal. On January 10, 1984, plaintiffs filed a 33-count amended complaint[1] which sought recovery of damages from Washington-Golf corporation, general contractor/developer/vendor, under theories of implied warranty of habitability, express warranty, breach of contract, negligence, wilful and wanton misconduct, and fraud; and from the subcontractors under theories of negligence and breach of the implied warranty of habitability. With respect to Corra, count XIV alleged that as a result of Corra's negligent installation of plumbing and plumbing fixtures, the sinks and shower units emitted strong, unpleasant odors and the toilets leaked at the base and did not flush properly. As a result, plaintiff unit owners alleged that they have paid or will have to pay to repair or replace sink and shower drains, garbage disposals, and toilets. Relying on the same alleged defects, discrepancies and damages, count XXV alleged that Corra had breached the implied warranty of habitability.

With respect to Weather Shield, count XXII of the amended complaint alleged that Weather Shield had negligently supplied the win-

---

[1]Plaintiffs' original complaint is not included in the records before this court.

dows and exterior sliding glass doors for the units and is responsible for resulting water damage to insulation, walls, ceilings, and electrical outlets. In addition, plaintiff Therese M. Plummer alleged that she had incurred medical costs for her minor son's allergic reaction to mold which began growing on the walls of her unit as the result of water intrusion from the windows and exterior sliding door. Plaintiffs further alleged that the insulation, window units, sliding doors and cracked and stained wallboard in both the individual units and in the common areas must be repaired or replaced. Relying on the identical defects, discrepancies, and damages alleged in count XXII, count XXXIII alleged that Weather Shield had breached the implied warranty of habitability.

On March 1, 1984, Corra and Weather Shield filed individual motions to strike and dismiss the respective negligence and breach-of-warranty counts. Regarding the negligence counts, both Corra and Weather Shield argued in their motions that pursuant to *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, plaintiffs cannot seek recovery in tort for damages that are solely in the nature of economic loss. Regarding the breach-of-implied-warranty counts, both movants argued that the cause of action cannot be asserted against a subcontractor when the contractor is a viable concern from whom plaintiffs can recover. In an order entered June 28, 1984, the court denied the motions to dismiss. Thereafter, on July 13, 1984, Corra and Weather Shield moved for certification of the issues presented in their motions to dismiss.

In the interim, on June 20, 1984, plaintiffs were granted leave to add count XXXIV, the RICO Act count, to their amended complaint. In response, Corra, Weather Shield, and numerous other subcontractors moved to dismiss the RICO Act count on the grounds that the RICO Act created exclusive Federal jurisdiction. On March 11, 1985, the court entered an order which restated its denial of Corra's and Weather Shield's motions to dismiss the negligence and warranty-of-habitability counts; granted all motions to dismiss the RICO Act count on jurisdictional grounds; and granted Corra's and Weather Shield's motions for certification of the negligence and warranty-of-habitability issues. Plaintiffs' timely appeal from dismissal of the RICO Act count followed.

■ We first address the issue of whether the damages alleged by plaintiffs constitute "solely economic losses" which, pursuant to *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, and its progeny, are barred from recovery in tort. In *Moorman,* plaintiff sought recovery in strict liability and negli-

gence for cost of repairs and loss of use when the grain storage tank he had purchased from defendant developed a crack in one of its steel plates. The supreme court held that the "remedy for economic loss, loss relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause, *** lies in contract." (91 Ill. 2d 69, 86.) The *Moorman* court adopted the recognized definition of economic loss as " 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property ***.' " 91 Ill. 2d 69, 82, quoting Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum. L. Rev. 917, 918 (1966).

In the present case, plaintiffs concur that, pursuant to *Moorman*, damages for solely economic losses are precluded in an action for tort. However, they argue that the losses alleged in their complaint were not solely economic, but included claims of personal injury as well as damage to property other than that claimed to be defective. Alternatively, plaintiffs argue that pursuant to *Ferentchak v. Village of Frankfort* (1985), 105 Ill. 2d 474, 475 N.E.2d 822, even if plaintiffs' losses were solely economic, the absence of a cause of action in contract against Corra and Weather Shield permits them to recover in tort.

With respect to Corra, plaintiffs allege improper sink, shower, and toilet installation and improper design and construction of the sink and shower, resulting in the repair or replacement of the sink and shower drains, garbage disposal, and toilets. Plaintiffs did not allege damage to property other than to the plumbing fixtures, nor did they allege personal injury resulting from the allegedly defective plumbing fixtures. Thus, we find that the alleged damages resulting from Corra's installation of the plumbing fixtures constitute solely economic losses not recoverable in tort. Accordingly, we conclude that the trial court erred in denying Corra's motion to dismiss count XIV.

■ A different situation arises with respect to the allegations of negligence against Weather Shield. Plaintiffs alleged that as a result of Weather Shield's negligence in supplying windows and exterior sliding glass doors, water and air intruded into the units, causing damage to insulation, walls, ceilings, floors and electrical outlets. In addition, plaintiffs alleged potential personal injury from sparking outlets, and one plaintiff, Therese M. Plummer, alleged that she incurred medical expenses for the treatment of an allergic reaction suffered by her minor son from exposure to mold growing on her carpeting as the result of water intrusion from the windows and sliding doors.

At the outset, we must determine whether the alleged property damage to insulation, walls, ceiling, floors, and electrical outlets constitutes consequential economic loss which would be barred from tort recovery under *Moorman* and its progeny, or whether the damage constitutes a valid exception to the economic-loss doctrine. In *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324, plaintiff, a subsequent purchaser, sought relief under theories of contract, tort, fraud and implied warranty of habitability against the builder of his house when the chimney and adjoining brick wall began to pull away from the house, causing a crack in the basement wall which resulted in water leakage in the basement and on the roof. The court held that recovery for deterioration alone, caused by latent structural defects, was not actionable in tort. In reaching its decision, the *Redarowicz* court stated:

> "A disappointed consumer of a storage tank [*Moorman*] or a disgruntled purchaser of a certain house cannot assert that, due to inferior workmanship that led to eventual deterioration, he can recover under a negligence theory in tort." (92 Ill. 2d 171, 177.)

In addition, the court distinguished the situation before it from one where defective construction caused a brick to fall on someone's head or a wall to collapse and destroy living room furniture. The latter illustrates a sudden, calamitous occurrence, more appropriately remedied by tort law (see *Vaughn v. General Motors Corp.* (1984), 102 Ill. 2d 431, 466 N.E.2d 195), while damage resulting from water leakage constitutes deterioration from a latent defect not recoverable in tort.

Similarly, in *Chicago Heights Venture v. Dynamit Nobel of America, Inc.* (7th Cir. 1986), 782 F.2d 723, the court of appeals applied Illinois law and held that tort recovery was not allowed for an action which sought compensation for water damage to the ceilings and walls of an apartment building as a result of defendant's negligence in supplying and installing roofing material. Relying on *Moorman* and *Redarowicz*, the court of appeals concluded:

> "Since [the roofing material] was necessarily attached to the structure, its malfunction necessarily caused incidental damage to the surrounding parts of the structure. The gravamen of the complaint—simply stated—is that the roof did not work. The district judge properly viewed such an allegation as a matter of economic loss, the result of a qualitative defect ***." 782 F.2d 723, 729.

In the present case, we find that the alleged property damage incidental to the defective windows and doors is indistinguishable from

the incidental damage alleged in both *Redarowicz* and *Chicago Heights Venture*, which the courts found to be damage consequent to the qualitative defects and not recoverable in tort. Similar to the situation in *Chicago Heights Venture*, the gravamen of plaintiffs' complaint in the case at bar is that the windows and sliding doors did not work, which constitutes an allegation of economic loss.

 █ In a further attempt to overcome the economic-loss-doctrine limitation for tort actions, plaintiffs alleged the potentiality of injury from water-damaged electrical circuitry and the respiratory problems of the minor son of one of the plaintiffs. It is well settled that in a negligence action, actual damage must be alleged before there can be recovery. Potential or speculative damages are insufficient. (*Hastings v. Abernathy Taxi Association, Inc.* (1973), 16 Ill. App. 3d 671, 306 N.E.2d 498.) Accordingly, we find that plaintiffs' allegation of potential harm fails to state, as a matter of law, a sufficient injury for tort recovery. In addition, we find the allegation made by one of the plaintiffs that her minor son suffered severe respiratory problems from mold growing on her carpeting as the result of water intrusion from the doors to be equally unpersuasive of sufficient personal injury to recover in tort. It is fundamental tort law that the plaintiff in an action for negligence must have suffered a legally compensable injury. (*Illinois Housing Development Authority v. Sjostrom & Sons, Inc.* (1982), 105 Ill. App. 3d 247, 433 N.E.2d 1350.) In the present case, the minor son was never made a party to this action. Thus, any injuries he may or may not have incurred are irrelevant to the issue before this court. See *In re Marriage of Arrington* (1986), 146 Ill. App. 3d 121.

Finally, as an alternative argument, plaintiffs contend that pursuant to *Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599, 459 N.E.2d 1085, *rev'd in part on other grounds*, 105 Ill. 2d 474, 475 N.E.2d 822, a party whose home is damaged by latent construction defects must be permitted to sue either under contract or under tort for economic losses. We find *Ferentchak* factually inapposite to the case at bar and limited in its holding to the unusual facts stated therein.

In *Ferentchak*, plaintiffs were permitted to sue the architect and the village in tort for solely economic losses because: (1) plaintiffs had no direct or indirect contractual relationship with defendants; (2) the harm (improper foundation grade levels) did not relate directly to reasonable commercial expectations; and (3) the architect was not an employee of the builder or otherwise in privity with him. By contrast, in the case at bar, both Corra and Weather Shield had a direct contrac-

tual relationship with Washington-Golf, the general contractor/developer/vendor; and the alleged damages related directly to reasonable commercial expectations. Accordingly, we conclude that the trial court erred, as a matter of law, in denying Corra's and Weather Shield's motions to dismiss negligence counts XIV and XXII.

■ We next address the issue whether a cause of action for breach of an implied warranty of habitability may be asserted by a plaintiff-purchaser against a subcontractor when the general contractor/developer/vendor is a viable concern. The warranty of habitability is a judicial invocation used to protect the expectations of purchasers of newly constructed homes or condominiums by holding builder/vendors or developer/vendors accountable to the purchasers for the construction of the residence. *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154; *Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 410 N.E.2d 902.

When originally formulated, a cause of action for breach of the warranty of habitability was available only to the initial purchaser of a residence against the builder/vendor (*Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 3d 31, 389 N.E.2d 1154), or against the builder/developer (*Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 410 N.E.2d 902). The cause of action could not be brought against subcontractors. (*Waterford Condominium Association v. Dunbar Corp.* (1982), 104 Ill. App. 3d 371, 432 N.E.2d 1009.) Subsequently, in *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324, the supreme court recognized that a subsequent purchaser needs the same protections as does an initial purchaser against latent defects in the construction of a residence. Accordingly, the *Redarowicz* court found that privity of contract was not required in a breach-of-warranty-of-habitability action and held that the warranty extended to subsequent purchasers. Although *Redarowicz* extended the availability of the cause of action to include subsequent purchasers, it did not extend the scope of possible defendants beyond the builder/vendor or builder/developer to include subcontractors. The court expressly stated that the rationale for extending the cause of action to subsequent purchasers was to assure that builder/vendors were held accountable and could not escape liability simply because the initial purchaser had sold the home before the latent defects became patent defects. The question of extending the scope of defendants to include subcontractors was not before the *Redarowicz* court.

■ Subsequently, in *Minton v. The Richards Group of Chicago* (1983), 116 Ill. App. 3d 852, 452 N.E.2d 835, this court carved out an exception to the exclusion of subcontractors as defendants in a cause

of action for breach of warranty of habitability. In *Minton*, the builder/vendor from whom plaintiffs had purchased their new home had since dissolved as an entity. Prior to its dissolution, plaintiffs had demanded that the builder/vendor correct the peeling paint on the outside of their home. However, nothing had been done. Because the builder/vendor had dissolved, plaintiffs filed a cause of action for breach of the warranty of habitability against the responsible subcontractor. On motion of the subcontractor, the trial court struck the complaint. On appeal, this court held:

> "[W]here the innocent purchaser has no recourse to the builder-vendor and has sustained loss due to the faulty and latent defect in their new home caused by the subcontractor, the warranty of habitability applies to such subcontractor." 116 Ill. App. 3d 852, 855.

In the present case, the plaintiffs have presented two arguments in support of their contention that Corra and Weather Shield, as subcontractors, are proper defendants in an action for breach of warranty of habitability. First, plaintiffs contend that *Redarowicz* extended the doctrine of warranty of habitability to include actions against subcontractors by its finding that privity is not required in warranty-of-habitability actions. Second, in a supplemental brief filed six months after Corra's and Weather Shield's reply brief had been filed, plaintiffs contend that Washington-Golf Corporation, the general contractor/builder/vendor, is insolvent. Thus, pursuant to *Minton*, plaintiffs' only recourse is against the subcontractors.

For clarity of argument, we shall address plaintiffs' contentions in reverse order. First, we reject plaintiffs' allegation that Washington-Golf Corporation is insolvent on the grounds that the allegation of insolvency is legally unsubstantiated and is a matter *de hors* the record. Therefore, the issue is not properly before this court. (See *Heaver v. Ward* (1979), 68 Ill. App. 3d 236, 386 N.E.2d 134.) As a result, we find the *Minton* exception inapplicable.

Regarding plaintiffs' contention that *Redarowicz* expanded the scope of potential defendants in a breach-of-warranty-of-habitability action, we disagree with plaintiffs' interpretation. As previously discussed, the *Redarowicz* court's holding, predicated on its finding that privity was not required in a warranty-of-habitability action, was specifically limited to extending the cause of action to subsequent purchasers. The *Redarowicz* court emphasized that its decision was to further the purpose of the warranty of habitability, which is to hold builder/vendors accountable for their performance. The court made no reference to subcontractors. We find plaintiffs' interpretation, which

results from taking the lack of privity finding out of context, to be unpersuasive. Further, because *Redarowicz* did not address the issue of whether the warranty of habitability applies to subcontractors, we disagree with plaintiffs' contention that *Redarowicz* had any "affect" on the precedential value of *Waterford Condominium Association v. Dunbar Corp.* (1982), 104 Ill. App. 3d 371, 432 N.E.2d 1009, which held that, generally, subcontractors are not proper defendants in a warranty-of-habitability action. As stated previously, the sole exception to the general rule of *Waterford* is set forth in *Minton v. The Richards Group of Chicago* (1983), 116 Ill. App. 3d 852, 452 N.E.2d 835, which we find irrelevant to the facts before this court for reasons previously discussed. Accordingly, we conclude that the trial court erred in denying Corra's and Weather Shield's motions to dismiss counts XXV and XXXIII, which alleged breach of the warranty of habitability.

■■ ■ Finally, in the second part of this consolidated appeal (No. 85–1084), plaintiffs allege that the trial court erred in its determination that Illinois State courts do not have concurrent jurisdiction in a cause of action brought under the RICO Act. We disagree.

Although the presumption exists that State courts enjoy concurrent jurisdiction over a Federal cause of action, the presumption can be rebutted by "an explicit statutory directive, by unmistakable implication from legislative history or by a clear incompatibility between state-court jurisdiction and federal interests." (*Gulf Offshore Co. v. Mobil Oil Corp.* (1981), 453 U.S. 473, 478, 69 L. Ed. 2d 784, 791, 101 S. Ct. 2870, 2875.) In *County of Cook v. Midcon Corp.* (N.D. Ill. 1983), 574 F. Supp. 902, the district court addressed the identical jurisdictional issue presented to this court and held that the presumption of concurrent jurisdiction had been effectively rebutted with respect to claims asserted under the RICO Act.[2]

In reaching its decision, the *Midcon* court focused on the legislative history of section 1964(c) of the RICO Act, which creates the civil remedy for private litigants and also confers jurisdiction on the Federal courts. Upon reviewing the legislative history, the court concluded that section 1964(c) was "consciously patterned" after the civil remedy provision in the Clayton Antitrust Act (15 U.S.C. sec. 15 (1982)), which has consistently been held to give Federal courts exclusive jurisdiction over Federal antitrust claims. Accordingly, the court

---

[2]On appeal, the Seventh Circuit Court of Appeals affirmed the district court's decision on other grounds, declining to address the issue of concurrent jurisdiction. *County of Cook v. Midcon Corp.* (7th Cir. 1985), 773 F.2d 892.

reasoned that "[i]t would be anomalous *** to hold that the jurisdictional grant in the RICO statute did anything other than create exclusive federal jurisdiction over civil claims by persons injured by violations of [the RICO Act]." 574 F. Supp. 902, 912.

Subsequently, in *Greenview Trading Co. v. Hershman & Leicher, P.C.* (1985), 108 A.D.2d 468, 489 N.Y.S.2d 502, the New York Supreme Court, Appellate Division, adopted *Midcon*'s analysis, adding that to allow concurrent jurisdiction over RICO claims would only serve to increase the "significant and pervasive disagreements" over the correct interpretation and application of the Act which already exist among the Federal district and circuit courts. The *Greenview* court also relied extensively on the legislative history of section 1964(c) of the Act, as well as published comments by Professor G. Robert Blakey, principal drafter of the RICO Act, who indicated that if anyone had inquired as to State court jurisdiction over RICO claims at the time the statute was being drafted, the drafters would have expressly disallowed it.

We concur with the analysis presented in both *Midcon* and *Greenview Trading Co.* and hold that the trial court properly dismissed count XXXIV of plaintiffs' amended complaint, which alleged violation of the Federal RICO Act.[3]

For the aforementioned reasons, we reverse the judgment of the circuit court denying Corra's and Weather Shield's motions to dismiss the negligence and warranty-of-habitability counts XIV, XXII, XXV, and XXXIII of the amended complaint and remand the cause with instructions for the court to enter an order sustaining those motions (No. 85—830); and affirm the judgment of the circuit court dismissing count XXXIV of the amended complaint (No. 85—1084).

Affirmed in part; reversed and remanded with instructions in part.

O'CONNOR and BUCKLEY, JJ., concur.

---

[3]In rendering our decision, we note that pursuant to *Tellis v. United States Fidelity & Guaranty* (7th Cir., filing date: November 6, 1986), No. 85—2704, plaintiffs' RICO claim may be time-barred in the Federal court. In *Tellis*, the court of appeals held that the two-year limitations period set forth in section 13—202 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—202) applies to all civil RICO lawsuits filed in Illinois Federal courts.