# Illinois Official Reports

## Appellate Court

---

### *Hecktman v. Pacific Indemnity Co.*, 2016 IL App (1st) 151459

---

| | |
|---|---|
| Appellate Court Caption | JEROLD HECKTMAN and RUTH HECKTMAN, Plaintiffs-Appellants, v. PACIFIC INDEMNITY COMPANY, a Wisconsin Corporation; OPTIMA OLD ORCHARD WOODS, L.L.C., an Illinois Limited Liability Company; OPTIMA INC., an Illinois Corporation; CONCRETE STRUCTURES OF THE MIDWEST, INC., an Illinois Corporation; EDWARDS ENGINGEERING INC., an Illinois Corporation; HURON VALLEY GLASS COMPANY, L.L.C., an Indiana Limited Liability Company; RWDI, d/b/a Rowan Williams Davies and Irwin, Inc., a Canadian Corporation; HEITMAN AND ASSOCIATES, a Missouri Corporation; JEK ARCHITECTURAL AND ENGINEERING SERVICES, INC., f/k/a JEK Engineering Services, Inc., an Illinois Corporation; CS ASSOCIATES, INC., f/k/a Chris P. Stefanos Associates, Inc., an Illinois Corporation; J.P. LARSEN, INC., an Illinois Corporation; AMERICAN ENCLOSURES INC., an Illinois Corporation; HAYES MECHANICAL L.L.C., a Delaware Corporation; C.A. HAYES MECHANICAL, INC., an Illinois Corporation; and ROBERTS HEATING AND AIR CONDITIONING, INC., an Illinois Corporation, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-15-1459 |
| Filed | July 20, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 12-L-6474, 14-L-11460 cons.; the Hon. Brigid Mary McGrath, Judge, presiding. |

| Judgment | Affirmed. |
|---|---|

| Counsel on Appeal | Leonard S. Shifflett, of Quarles & Brady, LLP, of Chicago, for appellants. |
|---|---|
| | Brian J. Hunt and Brian H. Myers, both of Hunt Law Group, LLC, of Chicago, for appellee J.P. Larsen, Inc. |
| | Timothy J. Young, Michael H. Carter, and Leena Soni, all of Lewis Brisbois Bisgaard & Smith LLP, of Chicago, for appellee American Enclosures, Inc. |
| | Lawrence S. Gosewisch and Thomas S. Flanigon, both of Adler, Murphy & McQuillen, LLP, of Chicago, for appellee CS Associates, Inc. |

| Panel | JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion. |
|---|---|
| | Presiding Justice Mason and Justice Lavin concurred in the judgment and opinion. |

**OPINION**

¶ 1 In this appeal, we are asked to determine whether the circuit court properly dismissed the plaintiffs' negligence claims on the basis they were barred by the economic loss doctrine articulated by our supreme court in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982). The plaintiffs argue that the *Moorman* doctrine does not apply to claims for injury to "other property," such as theirs, but is limited to barring damages for economic loss stemming solely from the "defective property" itself. For the reasons that follow, we affirm.

¶ 2 I. BACKGROUND

¶ 3 The record below reveals the following relevant facts and procedural history. The plaintiffs, husband and wife, Jerold and Ruth Hecktman (the Hecktmans), own three combined condominium units located on the 19th floor of 9725 Woods Drive, Skokie, Illinois, commonly referred to as "Optima Old Orchard Woods" (hereinafter the building). The units were purchased in 2008 from the defendant Optima Old Orchard Woods, L.L.C. (Optima Old Orchard). The units were purchased as "vanilla-box" shell units with no interior finishes. After the plaintiffs purchased the units, they contracted with a third party (not a defendant in the third

amended complaint, nor a party to this appeal) to construct interior walls and to install hardwood floors through their units. The hardwood floors were installed in 2009.

¶ 4 After the plaintiffs moved into their home in June 2009, portions of the hardwood flooring began to bow upward preventing closet and other doors from opening and causing them to scrape the floors. In some areas, the hardwood flooring has "cupped," *i.e.*, the edges of the floor planks have raised up so that the surface of what was once flat wood planks are now concave.

¶ 5 As a result, the plaintiffs commenced the instant litigation on June 8, 2012. On March 20, 2014, they filed their third amended complaint against a multitude of defendants, alleging, *inter alia*, that negligence in the construction of the building caused the damage to their hardwood floors. Specifically, the plaintiffs alleged that the hardwood floors were damaged by water infiltration that was caused by (1) inadequate construction of the curtain wall (window) system of their units, permitting water to enter the units from the outside, and (2) inadequate design, installation, and operation of the heating, ventilation, and air conditioning system (HVAC), which failed to properly remove humidity from the ambient air of the building and the plaintiffs' units.

¶ 6 The plaintiffs' 24-count complaint alleged negligence against the following defendants, all of whom stood in some contractual relationship with the builders: Optima Old Orchard (count I); Optima Inc. (Optima) (count III); Concrete Structures of the Midwest, Inc. (Concrete) (count V); Edwards Engineering Inc. (Edwards) (count VII); Huron Valley Glass Company, L.L.C. (Huron Valley) (count VIII); Heitman and Associates, Inc. (Heitman) (count IX); JEK Architectural and Engineering Services, Inc., f/k/a JEK Engineering Services, Inc. (JEK) (count XIII); CS Associates, Inc., f/k/a Chris P. Stefanos Associates, Inc. (CS Associates) (count XV); J.P. Larsen, Inc. (Larsen) (count XVII); American Enclosures Inc. (American Enclosures) (count XIX); Hayes Mechanical L.L.C. (Hayes) (count XXI); and Roberts Heating and Air Conditioning, Inc. (Roberts) (count XXIII).

¶ 7 The defendants filed combined motions to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2012)). On September 30, 2014, and December 12, 2014, the trial court granted the defendants' motions, dismissing with prejudice the plaintiffs' negligence counts (counts I, III, V, VII, IX, XI, XIII, XV, XVII, XIX, XX, XXIII) pursuant to the economic loss doctrine articulated in *Moorman*, 91 Ill. 2d 69. The plaintiffs filed a motion to reconsider, but that motion was denied on March 10, 2015. On April 15, 2015, the circuit court entered an order pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), finding that there was no just reason to delay either enforcement or appeal or both of these dismissals. The plaintiffs now appeal.

¶ 8                                    II. ANALYSIS

¶ 9 Before addressing the merits of the plaintiffs' contentions, we must first resolve which parties remain in this appeal. In that respect, we note that in their notice of appeal, the plaintiffs initially named the following parties as defendants-appellees: (1) Optima Old Orchard; (2) Optima; (3) Concrete; (4) Edwards; (5) Huron Valley; (6) Heitman; (7) JEK; (8) CS Associates; (9) Larsen; (10) American Enclosures; (11) Hayes; (12) Roberts; (13) C.A. Hayes Mechanical, Inc. (C.A. Hayes); (14) RWDI, d/b/a Rowan Williams Davies and Irwin, Inc. (RWDI); and (15) Pacific Indemnity Company (Pacific Indemnity).

¶ 10    On October 3, 2015, upon motion indicating settlement had been reached, this court entered an order dismissing the following defendants: (1) Pacific Indemnity; (2) Optima Old Orchard; (3) Optima; (4) Concrete; (5) Edwards; (6) Huron Valley; (7) Hayes; and (8) Roberts.[1] On May 6, 2016, on the appellants' motion, this court also entered an order dismissing CS Associates from the appeal, noting "[t]his appeal continues as to all other remaining defendants-appellants."

¶ 11    In their appellate brief, the plaintiffs assert that three defendants "remain in this proceeding": (1) JEK; (2) Larsen; and (3) American Enclosures.[2] Only Larsen and American Enclosures have chosen to file appearances and briefs before this court.[3] Since the plaintiffs seek relief only as to JEK, Larsen, and American Enclosures, we shall address their arguments in this context.

¶ 12    Turning to the merits, at the outset we note that our review of a trial court's order dismissing the plaintiffs' complaint is *de novo*. See *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 53; *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 8.

¶ 13    On appeal, the plaintiffs argue that the trial court improperly dismissed their negligence claims against the defendants pursuant to the *Moorman* doctrine. In *Moorman*, our supreme court held that a "plaintiff cannot recover for solely economic loss" under a tort theory of negligence. *Moorman*, 91 Ill. 2d at 91. The *Moorman* court reiterated that "economic loss" is defined as " 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property ***' [citation]." *Moorman*, 91 Ill. 2d at 82. In doing so, the *Moorman* court acknowledged that "[t]he demarcation between physical harm or property damage," which would support a claim for economic damages, and purely "economic loss," which would not, depends on "the nature of the defect and the manner in which the damage occurred." *Moorman*, 91 Ill. 2d at 82.   As the court in *Moorman* explained:

    " 'When the defect causes an accident "involving some violence or collision with external objects," the resulting loss is treated as property damage. On the other hand, when the damage to the product results from deterioration, internal breakage, or other non-accidental causes, it is treated as economic loss. *** Direct economic loss *** may be measured by costs of replacement and repair. Consequential economic loss includes

---

[1]We note that by this same order, the following parties were also dismissed from the appeal, even though they were not named as parties in the original notice of appeal nor in the third amended complaint: (1) Deutsch/Parker Design, Ltd.; (2) Larry N. Deutsch; (3) William F. Parker; (4) Design Construction Concepts, Ltd., n/k/a Old Design, Ltd., d/b/a Design Construction Concepts, Ltd. (the third-party contractor who constructed the hardwood floors in the plaintiffs' condominium units); and (5) Mosaic Construction, L.L.C.

[2]We note that the plaintiffs do not seek recovery against the following three defendants, which were initially named in their notice of appeal: RWDI, C.A. Hayes, and Heitman. This is understandable since RWDI and C.A. Hayes were not named as defendants in the third amended complaint, nor did any of the negligence counts from which the plaintiffs' now appeal discuss these parties in any way. As to Heitman, we note that upon inquiry the clerk of the appellate court has been notified that as a result of a settlement, Heitman will not be filing any pleadings in this appeal.

[3]We note that upon inquiry from the clerk of the appellate court, JEK has indicated that it will not be filing any pleadings in this appeal.

all indirect loss, such as loss of profits resulting from inability to make use of the defective product.' [Citation.]" *Moorman*, 91 Ill. 2d at 83.

¶ 14    The rationale behind the *Moorman* doctrine is that tort law provides a remedy for losses from personal injuries or property damage, and contract law and the Uniform Commercial Code (UCC) provide remedies for economic losses resulting from diminished commercial expectations without personal injury or property damage. See *Moorman*, 91 Ill. 2d at 88; see also *In re Illinois Bell Switching Station Litigation*, 161 Ill. 2d 233, 241 (1994). As our supreme court explained the policy considerations behind the doctrine:

> "When the defect is of a qualitative nature and the harm relates to the consumer's expectation that a product is of a particular quality so that it is fit for ordinary use, contract, rather than tort, law provides the appropriate set of rules for recovery. [Citation.] Moreover, *** if a manufacturer were held liable in negligence for the commercial loss suffered by a particular purchaser, it would be liable for business losses of other purchasers caused by the failure of its product to meet the specific needs of their businesses, even though the needs were communicated only to the dealer. [Citation.] Thus, a manufacturer could be held liable for damages of unknown and unlimited scope, even though the product is not unreasonably dangerous and even though there is no damage to person or property. [Citations.]" *Moorman*, 91 Ill. 2d at 88.

See also *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 418 (2004) ("the policy underlying the economic loss rule [is]: that because 'the economic consequences of any single accident are virtually endless,' a defendant who could be held liable for every economic effect of its tortious conduct would face virtually uninsurable risks, far out of proportion to its culpability. The economic loss rule operates to prevent such open-ended tort liability." (citing *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 207 (1997))); see also *In re Illinois Bell Switching Station Litigation*, 161 Ill. 2d at 241 ("The *Moorman* holding is bottomed upon the theory that tort law affords a remedy for losses occasioned by personal injuries or damage to one's property, but contract law and the Uniform Commercial Code offer the appropriate remedy for economic losses occasioned by diminished commercial expectations not coupled with injury to person or property. The *Moorman* court concluded that qualitative defects are best handled by contract rather than tort law."); *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 115 Ill. 2d 146, 153 (1986) ("plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract"); *American United Logistics, Inc. v. Cattelus Development Corp.*, 319 F.3d 921, 926 (7th Cir. 2003) ("The economic loss doctrine denies a tort remedy *** when the loss 'is rooted in disappointed contractual or commercial expectations.' [Citation.]").

¶ 15    There are only three recognized exceptions to the *Moorman* doctrine: (1) where the plaintiff sustained damage, *i.e.*, personal injury or property damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional false representation (*i.e.*, fraud); and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions. See *Moorman*, 91 Ill. 2d at 86, 88-89; see also *In re Illinois Bell Switching Station Litigation*, 161 Ill. 2d at

240-41; *In re Chicago Flood Litigation*, 176 Ill. 2d at 199; *1324 W. Pratt Condominium Ass'n v. Platt Construction Group, Inc.*, 404 Ill. App. 3d 611, 618 (2010).

¶ 16     In the present case, the plaintiffs acknowledge that only the first exception is at issue in this appeal. They argue, however, that to proceed under that exception they need not establish a sudden and dangerous occurrence but need only establish damage to other property. In that effort, the plaintiffs point out that they have sufficiently alleged damage to "other property" because they are seeking to recover costs of repair for their hardwood floors, rather than the cost of repair to the allegedly defective curtain wall system and building HVAC. For the reasons that follow, we disagree.

¶ 17     Contrary to the plaintiffs' position, under the first *Moorman* doctrine exception, neither a sudden, dangerous, or calamitous occurrence standing alone, nor an injury (to person or other property), is sufficient to bring a claim within the bounds of tort recovery. See *In re Chicago Flood Litigation*, 176 Ill. 2d at 200-01. Rather, in order to satisfy the requirements of that exception, the plaintiffs must establish both (1) that they sustained damage to property and (2) that the damage was caused by a sudden, dangerous, or calamitous event. See *In re Chicago Flood Litigation*, 176 Ill. 2d at 200-01. As our supreme court clarified in *In re Chicago Flood Litigation*:

> "Courts do not speak of a calamitous, sudden, or dangerous event or occurrence to avoid the economic loss rule, but rather to distinguish tort damages from mere economic loss. In other words, the event, by itself, does not constitute an exception to the economic loss rule. Rather, the exception is composed of a sudden, dangerous, or calamitous event *coupled* with personal injury or property damage.
>
>     *** [T]he economic loss rule applies even to plaintiffs who have incurred physical damage to their property if the damage is caused by disappointed commercial expectations, gradual deterioration, internal breakage, or other nonaccidental causes, rather than a dangerous event.*" (Emphases added.) *In re Chicago Flood Litigation*, 176 Ill. 2d at 200-01.

¶ 18     The plaintiffs here have failed to allege a sudden, dangerous, or calamitous event. Their third amended complaint explicitly alleges that their hardwood floors became deformed *over time* due to a failure of the curtain wall system to keep moisture out of their units and the failure of the HVAC to remove humidity from them. As such, they cannot avail themselves of this exception. See, *e.g.*, *NBD Bank v. Krueger Ringier, Inc.*, 292 Ill. App. 3d 691, 693 (1997) (holding that the leaking of a petroleum-based substance over time from underground storage tanks that resulted in contaminated real estate was not sufficiently sudden, dangerous, or calamitous to satisfy the exception); *Cloverhill Pastry-Vend Corp. v. Continental Carbonics Products, Inc.*, 214 Ill. App. 3d 526, 527-28 (1991) (holding that emission of small flakes of metal over time by a dry ice crusher into dough at a bakery that resulted in contaminated baked goods was insufficient to satisfy sudden, dangerous, or calamitous event); *Wheeling Trust & Savings Bank v. Tremco Inc.*, 153 Ill. App. 3d 136, 142 (1987) (holding that emission of a gas over time from materials used to install the curtain wall of an office building that resulted in etching and streaking of the windows was insufficient to satisfy sudden, dangerous, or calamitous *Moorman* doctrine exception); *Cf. United Air Lines, Inc. v. CEI Industries of Illinois, Inc.*, 148 Ill. App. 3d 332, 340 (1986) (holding that the gradual accumulation of water that resulted in a *sudden roof collapse* constituted a calamitous event); *Electronics Group, Inc. v. Central Roofing Co.*, 164 Ill. App. 3d 915, 918-19 (1987) (holding that a roof leak that

caused a substantial amount of water to pour into a warehouse *in single day* was a calamitous event); *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill. 2d 378, 388 (1986) (holding that construction activity that resulted in a "sudden and dangerous conflagration" at a warehouse was a calamitous event (emphasis omitted)).

¶ 19     What is more, it is apparent that the other "property damage" alleged by the plaintiffs is nothing more than damage incidental to the defective construction of the building, which our courts have previously held is damage "consequent to the qualitative defects," and therefore not recoverable in tort. *Washington Courte Condominium Ass'n-Four v. Washington-Golf Corp.*, 150 Ill. App. 3d 681, 686-87 (1986); see also *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171 (1982). In *Redarowicz*, 92 Ill. 2d at 176, the court held that the plaintiff, a subsequent purchaser of a property, was barred from proceeding with his tort action against the builder of the property on the basis that the chimney and adjoining brick wall began to pull away from the property, causing a crack in the basement wall, which resulted in water leakage in the basement and on the roof. The court held that recovery for deterioration alone, caused by latent structural defects, was not actionable in tort. *Redarowicz*, 92 Ill. 2d at 177. In reaching its decision, the *Redarowicz* court stated:

> "A disappointed consumer *** or a disgruntled purchaser of a certain house cannot assert that, due to inferior workmanship that led to eventual deterioration, he can recover under a negligence theory in tort." *Redarowicz*, 92 Ill. 2d at 177.

In addition, the *Redarowicz* court distinguished the situation before it from one where defective construction caused a brick to fall on someone's head or a wall to collapse and destroy living room furniture. *Redarowicz*, 92 Ill. 2d at 178. According to *Redarowicz*, the latter illustrates a sudden, calamitous occurrence, more appropriately remedied by tort law, while damage resulting from water leakage constitutes deterioration from a latent defect barred by the *Moorman* doctrine. *Redarowicz*, 92 Ill. 2d at 178

¶ 20     Similarly, in *Chicago Heights Venture v. Dynamit Nobel of America, Inc.*, 782 F.2d 723 (7th Cir. 1986), the court of appeals applied Illinois law and held that tort recovery was unavailable for an action that sought compensation for water damage to the ceilings and walls of an apartment building, resulting from the defendant's negligence in supplying and installing roofing material. Relying on *Moorman* and *Redarowicz*, the court of appeals concluded:

> "Since [the roofing material] was necessarily attached to the structure, its malfunction necessarily caused incidental damage to the surrounding parts of the structure. The gravamen of the complaint—simply stated—is that the roof did not work. The district judge properly viewed such an allegation as a matter of economic loss, the result of a qualitative defect ***." *Chicago Heights Venture*, 782 F.2d at 729.

¶ 21     Likewise, in *Washington Courte*, the condominium association and certain unit owners sued in tort the general contractor and several subcontractors involved in the construction of their building, alleging, *inter alia*, improper installation of windows and sliding glass doors, which led to damage to insulation, walls, ceilings, and floors. *Washington Courte*, 150 Ill. App. 3d at 685. The court found that incidental moisture damage to the units' walls, ceilings and floors did not provide for an exception to the economic loss doctrine merely because it was separate from the defective product (the windows and the glass doors). *Washington Courte*, 150 Ill. App. 3d at 686-87. Instead, the damage to the units was "consequent to the qualitative defects," not a sudden, calamitous event, and therefore not recoverable in tort. *Washington Courte*, 150 Ill. App. 3d at 687.

¶ 22    Applying the aforementioned precedent to the cause at bar, it is apparent that the damage to the hardwood floors is consequent to any alleged qualitative defects to the building's curtain wall and HVAC systems and therefore constitutes purely economic loss not recoverable in tort. The fact that the hardwood floors were installed after the building was constructed makes no difference to this analysis. Accordingly, the trial court properly dismissed the plaintiffs' tort claims as barred by the *Moorman* doctrine. See *Washington Courte*, 150 Ill. App. 3d at 687. The plaintiffs nevertheless argue that the humidity in their condominium units is "contamination," for which there is no requirement that the plaintiffs prove a sudden and dangerous occurrence so as to avoid the *Moorman* doctrine. In support, the plaintiffs cite *Board of Education of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428 (1989). The plaintiffs, however, misconstrue that case.

¶ 23    In *A, C & S*, the plaintiffs (a number of school districts) sued various manufacturers and distributors of asbestos to recover the costs of removing asbestos from the school district's property, which the school districts were required to remove by law. *A, C & S*, 131 Ill. 2d at 436-37. While our supreme court found that the *Moorman* doctrine did not apply to bar the plaintiffs' cause of action in that case, the ruling was narrow and specifically focused on the fact that the "nature of the defect" (*i.e.*, the presence of carcinogenic asbestos fibers on school premises) and the "damage" caused by the asbestos was unique and could not easily fit within the framework differentiating tort from contract. *A, C & S*, 131 Ill. 2d at 445-46, 450. The court in that case acknowledged that calling asbestos contamination "sudden" would be "artificial" and therefore held that recovery for such contamination would not be barred under the sudden and dangerous occurrence exception but only if the contamination itself was hazardous or unreasonably dangerous. See *A, C & S*, 131 Ill. 2d at 449-50 ("[T]he critical inquiry in this instance is whether the product has an unreasonably dangerous defect and whether the defect caused the property damage alleged."). In so ruling, the court narrowed the scope of its holding and explicitly warned that this holding "should not be construed as an invitation to bring economic loss contract actions within the sphere of tort law through the use of some fictional property damage." *A, C & S*, 131 Ill. 2d at 445.

¶ 24    Contrary to the plaintiffs' assertion, *A, C & S* "does not represent an [independent] exception to [the] *Moorman* [doctrine]." *Beretta*, 213 Ill. 2d at 420. In fact, in *Beretta*, a case decided after *A, C & S*, our supreme court explained that *A, C & S* predates our supreme court's decision in *In re Chicago Flood Litigation* in which "the recognized exceptions to the *Moorman* doctrine were listed." *Beretta*, 213 Ill. 2d at 420. As the court in *Beretta* explained *A, C & S* "merely stands for the proposition that because contamination is a form of property damage, the cost of asbestos removal from a plaintiffs' property does not constitute a solely economic loss subject to the bar of *Moorman*." *Beretta*, 213 Ill. 2d at 420.

¶ 25    What is more, unlike in *A, C & S*, in the present case, the plaintiffs have nowhere alleged in their third amended complaint that the contamination of their units with excess humidity is either hazardous or unreasonably dangerous. In fact, "the only danger to the plaintiff[s] is that [they] would be forced to incur additional expenses for living conditions that were less than what was bargained for." *Redarowicz*, 92 Ill. 2d at 178. As such, their negligence cause of action does not fit within the scope of any of the exceptions articulated under the *Moorman* doctrine, and the trial court properly dismissed their claims. See *Redarowicz*, 92 Ill. 2d at 177 ("To recover in negligence there must be a showing of harm above and beyond disappointed expectations. A buyer's desire to enjoy the benefit of his bargain is not an interest that tort law

- 8 -

traditionally protects.").

¶ 26                              III. CONCLUSION

¶ 27           For the aforementioned reasons, we affirm the judgment of the circuit court.

¶ 28           Affirmed.