MICHAEL J. McCLURE *et al.*, Plaintiffs-Appellants, v. ROBERT SENNSTROM *et al.*, Defendants-Appellees.

Second District No. 2—93—0880

Opinion filed November 14, 1994.—Rehearing denied December 20, 1994.

Sean M. Lazzari, of La Grange, for appellants.

John R. Wimmer, of Downers Grove, for appellees Richard Sigerich and Margaret Sigerich.

Richard L. Gualano, of Westmont, for appellees Robert Sennstrom and Nancy Sennstrom.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs, Michael and Jeri McClure, appeal from an order of the circuit court of Du Page County which dismissed count III of their first amended complaint on the ground that it failed to state a cause of action. Count III purported to allege a breach of the implied warranty of habitability on a residence plaintiffs purchased from the defendants, Robert and Nancy Sennstrom and Richard and Margaret Sigerich, who were doing business as S&S Partners. Plaintiffs claim the trial court erred in finding that the warranty was not applicable.

Plaintiffs entered into a real estate sales contract with the defendants for the purchase of a house located in Downers Grove. After closing on the property, the plaintiffs discovered a number of defects. They gave notice of these to the defendants, in accord with the terms of a one-year express warranty on the residence. When the defendants did not correct all of the claimed defects, plaintiffs filed a complaint which included count III, for breach of the implied warranty of habitability. Although defendants answered the complaint in part, they moved to dismiss count III pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)). The trial court granted the motion, finding that the facts alleged did not give rise to the implied warranty of habitability. Plaintiffs' motion to reconsider was denied, and this appeal followed.

■ Whether to grant or deny a section 2—615 motion is within the sound discretion of the trial court whose decision will not be disturbed absent an abuse of that discretion. (*La Salle National Trust, N.A. v. Village of Mettawa* (1993), 249 Ill. App. 3d 550, 557.) When deciding a section 2—615 motion, the trial court must take as true all well-pleaded facts set forth in the nonmovant's pleadings as well as the reasonable inferences to be drawn from those facts. (*Harris Trust & Savings Bank v. Donovan* (1991), 145 Ill. 2d 166, 172.) A pleading should not be dismissed under section 2—615 unless it clearly appears that no set of facts can be proved which will entitle the pleader to relief. (*Faulkner v. Gilmore* (1993), 251 Ill. App. 3d 34, 37.) Hence, plaintiffs' count III was properly dismissed only if its allegations demonstrated that plaintiffs could never prove the facts necessary to secure relief under an implied warranty of habitability.

The Illinois Supreme Court recognized an implied warranty of

habitability which permits a purchaser to recover from a builder-seller for latent defects in a newly constructed home in *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31. Accordingly, in their first amended complaint plaintiffs alleged, in relevant part, that the defendant partnership was engaged in the teardown of an old residence at a Downers Grove location, and the construction of a new residence at the same location; that they had entered into a real estate sales contract for the purchase of that residence from defendants; that the house which was the subject of the real estate contract was "a [*sic*] older home which was torn down to the foundation and a new residence was build [*sic*] by the defendants"; and that certain defects had revealed themselves in the completed residence.

In their motion to dismiss defendants contended that the house was partly new and partly old in that it included the foundation from an older home, and that the warranty was not implied with regard to such a structure. The trial court interpreted *Petersen* and its progeny to restrict the application of the implied warranty of habitability to "*new*" house construction. Then, specifically citing the language in the complaint that " 'an older home *** was torn down to the foundation and a new residence was built,' " the court held that plaintiffs' allegation did not allege sufficient facts to make possible the application of the implied warranty. Plaintiffs' motion for reconsideration was denied, and the trial court found that there was no just reason to delay appeal of its finding, pursuant to Supreme Court Rule 304(a) (Official Reports Advance Sheet No. 26 (December 22, 1993), R. 304(a), eff. February 1, 1994). Whether the implied warranty of habitability applies to the facts of this case, where, except for its foundation, the house sold to plaintiffs by the builder-seller was entirely new, is a question of first impression.

The *Petersen* court explained that the implied warranty of habitability in cases involving the sale of new homes by a builder-vendor was a judicial innovation which was used, as a matter of public policy, to afford relief to new home buyers who discover latent defects in the home. It was meant to avoid the harshness of *caveat emptor* and the doctrine of merger, whereby all provisions of the contract of sale become merged in the deed and, absent reservations in the document itself, relief to the buyer is precluded after receipt of the deed. (*Petersen*, 76 Ill. 2d at 38, 41.) Noting the nature of present-day new home construction methods, the court remarked that the buyer, who is often making the largest single investment of his life, has little or no opportunity to inspect. He is usually not knowledgeable regarding construction matters and must rely significantly on

the integrity and skill of the builder-seller, who is in the business of building and selling houses. (*Petersen*, 76 Ill. 2d at 39-40.) Thus, the warranty was implied as an independent undertaking, rather than as a result of the execution of the deed, because of the "unusual dependent relationship of the vendee to the vendor." (*Petersen*, 76 Ill. 2d at 41.) The court concluded that the buyer has a right to expect the benefit of his bargain, meaning a house that is reasonably fit for its intended use as a residence. *Petersen*, 76 Ill. 2d at 40, 41.

It is noteworthy that the *Petersen* court acknowledged, and rejected, authority holding that the warranty applies only when the house the plaintiff wishes to purchase is not completed at the time the contract is executed. Those cases reason that if the house is completed the buyer can thoroughly inspect it for defects before signing the contract. The *Petersen* court, however, indicated that generally it makes no difference whether the house is complete or incomplete. The latent defects would not be discoverable by a buyer in either case, and the buyer's reliance on the integrity and skill of the builder-vendor, therefore, would be the same in either case. Hence, the buyer should be permitted to recover for latent defects in either case. The builder-vendor is selling a house which he knows will be used as a home, and the buyer's expectation that the house will be reasonably suitable for that purpose is reasonable, regardless of its state of completion when the contract is signed. *Petersen*, 76 Ill. 2d at 40.

Since *Petersen* was decided, the warranty of habitability has been broadly applied to protect innocent home buyers. Observing that the purpose of the implied warranty is to provide just such protection, the court in *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, extended the warranty to a subsequent purchaser where the original purchaser had resold the home within a relatively short period of time, and the latent defects manifested themselves within a reasonable time after the subsequent purchase of the house. Reciting the same limitations on the ability of a purchaser to discover defects that had been discussed in *Petersen*, the *Redarowicz* court reasoned in substantial part that the subsequent buyer, like the initial buyer, depended on the expertise of the builder. Similarly, in *Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, the warranty was effective against the developer-seller of a condominium complex, even though the company did not build the condominiums, on the basis that the buyers depended on the developer to hire a competent contractor and had no control over the developer's choice. In *Park v. Sohn* (1982), 89 Ill. 2d 453, the court rejected the proposition that the warranty is implied only in sales by vendors who are mass producers of houses or

full-time professional builders and applied it to a part-time builder who had built only one house prior to the one involved in the case.

The warranty was also successfully invoked against a subcontractor of the builder-vendor in *Minton v. Richards Group* (1983), 116 Ill. App. 3d 852, where the builder-vendor was dissolved and showed no assets. Agreeing with *Redarowicz* that the purpose of the implied warranty is to protect innocent purchasers, the court noted the buyer's dependence on the builder's ability to hire capable subcontractors and the lack of control over the builder's choice of subcontractor. In *Hefler v. Wright* (1984), 121 Ill. App. 3d 739, the defendant merely erected a house on land the plaintiffs already owned, and the packaged house had been manufactured by another company. Nevertheless, defendant was a builder-vendor because he was engaged in the commercial business of building houses and the buyers were dependent on him.

Several cases have also addressed the specific question of whether a residence is "new" within the meaning of the warranty. The *Park* court held a residence was new even though the defendants had lived in it for approximately two years before it was sold. The court reasoned that to hold the warranty inapplicable merely because the defendants had occupied it would provide builders with an easy way to avoid the warranty. (*Park*, 89 Ill. 2d at 463.) Citing *Park*, and remarking that the purchaser who relied on the builder-vendor should not have to bear the responsibility for latent defects, the court in *Cotter v. Parrish* (1988), 166 Ill. App. 3d 836, held the warranty applicable where the defendants had resided in the home for nearly four years.

■ It is abundantly clear from the cases that the purpose of the implied warranty of habitability is to avoid unjust results by protecting the expectation of new home buyers that they will receive from a builder-vendor or developer-vendor that for which they bargained, namely, a house that is reasonably fit for use as a residence. (See *Petersen*, 76 Ill. 2d 31.) The warranty accomplishes this purpose by holding builder-vendors accountable. Thus, the warranty will apply where an innocent home buyer must rely on the knowledge, skill and integrity of another party, most often the builder-seller, to deliver a house that is reasonably suitable for a residence. The element of reliance is present when the buyer has little opportunity to inspect the construction or is not familiar with construction practices and, therefore, not capable of making a meaningful inspection of the house, whereas the builder-seller is in the business of building and selling houses. When the facts of this case are examined, both in and of themselves, and in light of these

principles, it is compelling that the structure involved here was "new" for purposes of giving rise to the warranty.

■ It is true that defendants used an existing foundation when they built the house which was ultimately purchased by plaintiffs. That foundation, however, was fully integrated into and became part of what was otherwise an *entirely new* house. Obviously, the foundation by itself could serve no residential purposes. It was only with the erection of a structure on the foundation that the project could have taken on the nature of a house. That structure was totally new. The foundation, while certainly significant to the integrity of the completed residence, was only one facet—and an inconspicuous facet at that—among many which gave the final product the character of a house. We believe the facts themselves reflect that the house purchased by plaintiffs was essentially a new house.

Moreover, assuming defendants were builder-sellers and plaintiffs were lay buyers, plaintiffs relied on defendants' knowledge, skill, and integrity to deliver a house reasonably fit for use as a residence. That reliance did not start and stop with the portion of the house above the foundation. It appears from both the allegations in the complaint and the real estate contract attached to the complaint that plaintiffs purchased a completed or nearly completed house. Taking these allegations as true, the builder was the one who used the old foundation, who prepared or perhaps modified it to accommodate the new superstructure, who did whatever was necessary to make the foundation an integral and sound element of the completed new house. Simply stated, it was the builder-seller, not the buyer, who had control over the use of the old foundation. Consequently, latent defects in the foundation were no more discoverable by the plaintiffs than were such defects in the completely new superstructure of the house. Plaintiffs' reliance on the builder-seller was the same no matter what part of the house is considered. Defendants sold the house knowing it would be used as a home, and plaintiffs' expectation that the house would be reasonably suitable for that purpose was reasonable, despite the fact that defendants utilized an existing foundation. See *Petersen*, 76 Ill. 2d at 40.

Under the circumstances of this case, where the house involved was basically a new house in the usual sense, and the buyers relied on the expertise of the builder-seller for the suitability of the *entire* house, not just part of it, we hold as a matter of law that the house was "new" within the meaning of the implied warranty of habitability. Contrary to the conclusion of the trial court, therefore, the warranty was applicable. Taking as true the well-pleaded facts in plaintiffs' count III, as we must (*Harris Trust*, 145 Ill. 2d at 172), it

does not clearly appear that no set of facts could be proved which would entitle plaintiffs to relief. Accordingly, defendants' section 2—615 motion to dismiss count III should have been denied.

The authorities cited by defendants provide little support for their position. *Sweetwood v. Mahoney* (1981), 93 Ill. App. 3d 788, involved the sale of an older structure by a nonbuilder vendor, and the only thing new was a recently installed furnace system. In *Hays v. Gilliam* (Tenn. Ct. App. 1983), 655 S.W.2d 158, the structure was an apartment building rather than a home, was not recently constructed since it had been under construction for five years, and was purchased by an investor in a commercial enterprise rather than a naive home buyer. The structure in *Miles v. Love* (1977), 1 Kan. App. 2d 630, 573 P.2d 622, had a recently built addition but was nevertheless "a basically used house" (*Miles*, 1 Kan. App. 2d at 633, 573 P.2d at 625), and the defects existed in the used house before the additions. In contrast, here there was only a foundation, and no "used house" in which the defects could have existed.

For all of these reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

WOODWARD and COLWELL, JJ., concur.