No. 1-10-0159

SECOND DIVISION
SEPTEMBER 28, 2010

No. 1-10-0159

| | | |
|---|---|---|
| 1324 W. PRATT CONDOMINIUM ASSOCIATION, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 08 L 14415 |
| PLATT CONSTRUCTION GROUP, INC., | ) ) | Honorable Ronald F. Bartkowicz |
| Defendant-Appellee. | ) | Judge Presiding |

PRESIDING JUSTICE THEIS delivered the opinion of the court:

This case arises from allegations of faulty construction of a residential building. Plaintiff 1324 W. Pratt Condominium Association appeals from an order of the trial court that dismissed two counts of plaintiff's complaint against defendant Platt Construction Group, Inc., that alleged breach of the implied warranty of habitability and negligence. For the reasons that follow, we affirm in part and reverse in part.

BACKGROUND

Between 2004 and 2005, defendant constructed an eight-unit residential building located at 1324 W. Pratt Boulevard in Chicago. Defendant constructed the building pursuant to a contract with a developer, 6801 N. Wayne, L.L.C. The developer sold the individual units as condominiums, and the owners of the units formed the plaintiff condominium association in order to represent their collective interests. Defendant and plaintiff never entered into any direct

1

No. 1-10-0159

contract.

Defendant completed the building in March 2005, and the individual owners took up residence. For reasons not disclosed in the record, the developer was involuntarily dissolved on November 28, 2005. Plaintiff alleged that, at some point after the developer dissolved, the unit owners discovered water leaks around windows, doors, ceilings, and vents in their units and common areas of the building. The leaks damaged not only the physical structure of the building but also unit owners' personal property, such as furniture and books. Water also seeped into the walls, causing mold to grow throughout the building. Plaintiff alleged that the increased moisture caused the unit owners to experience medical problems such as worsening asthma and flu-like symptoms. Plaintiff eventually retained a property inspector, who determined that the leaks were due to a faulty roof and other construction anomalies.

In September 2008, the Chicago area experienced a series of severe rainstorms. Plaintiff alleged that these storms substantially worsened the leaks in the building and exacerbated the mold problem. Plaintiff incurred significant costs in repairing the leaks and removing the mold from the building.

Plaintiff filed its original complaint against three parties on December 31, 2008: defendant, the developer, and the roofing contractor. The complaint recounted the above allegations and asserted numerous causes of action related to the allegedly faulty construction of the building. Four counts were directed against defendant, alleging negligence, breach of the implied warranties of good workmanship and habitability, and breach of contract under a third-party beneficiary theory. Plaintiff sought damages for repairs to the building itself, common

2

areas, and individual units, as well as inspection and assessment costs for engineers and other construction experts.

On June 9, 2009, defendant filed a motion to dismiss all four counts against it under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2008)), but only the counts for breach of the implied warranty of habitability and negligence are at issue on this appeal. Defendant argued in its motion that it could not be held liable under an implied warranty of habitability theory because the implied warranty only applies to "builder-vendors," that is, builders who not only construct a residential building but who are also involved in the sale of the residence to a purchaser. Defendant further argued that it could not be held liable in negligence because plaintiff was seeking solely economic damages. Defendant argued that the Moorman doctrine, as articulated in Moorman Manufacturing Co. v. National Tank Co., 91 Ill. 2d 69 (1982), precludes recovery of such economic damages under a tort theory. Plaintiff responded that the implied warranty of habitability has never been limited to only builder-vendors, and that the policies underlying the warranty apply equally well to builders. Plaintiff further argued that the "sudden or dangerous occurrence" exception to the Moorman doctrine applies in this case because the water damage to the building resulted from the September 2008 storms, relying on Mars, Inc.v. Heritage Builders of Effingham, Inc., 327 Ill. App. 3d 346 (4th Dist. 2002) (holding that a single thunderstorm was a sudden and dangerous occurrence).

The trial court granted defendant's motion to dismiss on all four counts on September 11, 2009. Plaintiff filed a motion to reconsider the trial court's ruling on the counts for breach of the implied warranty of habitability and negligence. On December 8, 2009, the trial court issued a

written opinion and order denying plaintiff's motion to reconsider. In its opinion, the trial court did not address plaintiff's arguments on the implied warranty of habitability theory, but it did address the negligence issue. The trial court rejected plaintiff's reliance on Mars and declined to find that the September 2008 thunderstorms were a sudden and dangerous occurrence.

Because the trial court's order only disposed of plaintiff's claims against one defendant, it was not an appealable order and plaintiff could not immediately appeal without permission from the trial court. See 134 Ill. 2d R. 304(a). On January 6, 2010, plaintiff moved for entry of a final judgment on the dismissal of the counts against defendant. Pursuant to Supreme Court Rule 304(a), the trial court entered an order of final judgment, noting that there was no just reason to delay an appeal of its order dismissing the implied warranty of habitability and negligence counts. Plaintiff filed a timely notice of appeal on January 13, 2010.

ANALYSIS

On appeal, plaintiff argues that the trial court erred in dismissing the implied warranty of habitability and negligence counts against defendant. First, plaintiff argues that the warranty applies to builders, not just to builder-vendors. Second, plaintiff argues that the sudden or dangerous occurrence exception to the Moorman doctrine applies to its negligence allegations.

We review an order of dismissal pursuant to section 2-619(a)(9) de novo, accepting as true all well-pled facts contained in the complaint and in any uncontradicted affidavits attached to the motion. See Coady v. Harpo, Inc., 308 Ill. App. 3d 153, 158-59 (1999). The question on review is " 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' "

4

No. 1-10-0159

<u>Doyle v. Holy Cross Hospital</u>, 186 Ill. 2d 104, 110 (1999), quoting <u>Kedzie & 103rd Currency</u>

<u>Exchange, Inc. v. Hodge</u>, 156 Ill. 2d 112, 116-17 (1993).

We initially note that defendant did not file an appellee's brief on appeal. We have

thoroughly reviewed both plaintiff's appellate brief and the record, and we find that the issues

and claimed errors in this case are uncomplicated enough that we can reach the merits of

plaintiff's contentions without defendant's opposing brief. See <u>First Capitol Mortgage Corp. v.</u>

<u>Talandis Construction Corp.</u>, 63 Ill. 2d 128, 133 (1976). Additionally, the record contains

defendant's brief in support its motion to dismiss, as well as its written reply to plaintiff's own

brief opposing the motion. The issues that we are called upon to decide on appeal were well

briefed in the trial court, and the absence of defendant's brief on appeal does not impede our

review of these issues.

We first examine whether the trial court erred by dismissing the implied warranty of

habitability count. The implied warrant of habitability is a "creature of public policy" that is

designed "to protect purchasers of new houses upon discovery of latent defects in their homes."

<u>Redarowicz v. Ohlendorf</u>, 92 Ill. 2d 171, 183 (1982). Historically, the rule of <u>caveat emptor</u>

governed sales of real property, and buyers could only rely on contract law in order to hold

builders liable for defects in the construction of new homes. See <u>Redarowicz</u>, 92 Ill. 2d at 180.

This rule remained unchanged in the United States until 1957, when the implied warranty of

habitability was first applied. See <u>Redarowicz</u>, 92 Ill. 2d at 180, citing <u>Vanderschrier v. Aaron</u>,

103 Ohio App. 340, 140 N.E.2d 819 (1957).

The Illinois Supreme Court first recognized the warranty in the landlord-tenant context in

Jack Spring, Inc. v. Little, 50 Ill. 2d 351 (1972), and later expanded the warranty to the sale of new homes in Petersen v. Hubschman Construction Co., 76 Ill. 2d 31 (1979). Since Petersen, the warranty has been steadily expanded over the years in order to serve the underlying public policy of protecting new homeowners. The class of plaintiffs with standing to sue for violation of the implied warranty has been expanded. See, e.g., Redarowicz v. Ohlendorf, 92 Ill. 2d 171 (1982) (successive purchasers). The types of structures covered by the warranty have also been expanded. See, e.g., VonHoldt v. Barba & Barba Construction, Inc., 175 Ill. 2d 426 (1997) (new additions to existing structures); Park v. Sohn, 89 Ill. 2d 453 (1982) (home lived in by builder-vendor before sale); McClure v. Sennstrom, 267 Ill. App. 3d 277 (1994) (house built on pre-existing foundation); Briarcliffe West Townshouse Owners Ass'n v. Wiseman Construction Co., 118 Ill. App. 3d 163 (1983) (vacant common lot of townhouse development); Herlihy v. Dunbar Builders Corp., 92 Ill. App. 3d 310 (1980) (common elements of condominiums). Finally, the class of potential defendants has been expanded. See, e.g., Park v. Sohn, 89 Ill. 2d 453 (builder-vendor need not be in the business of building); Hefler v. Wright, 121 Ill. App. 3d 739 (1984) (builder who erected house manufactured by another party); Minton v. The Richards Group of Chicago, 116 Ill. App. 3d 852 (1983) (subcontractors); Tassan v. United Development Co., 88 Ill. App. 3d 581 (1980) (developer).

All of these cases are based on the underlying public policy of the implied warranty of habitability, which our supreme court has articulated in each of its cases that has addressed this issue. See Board of Directors of Bloomfield Club Recreation Ass'n v. The Hoffman Group, Inc., 186 Ill. 2d 419, 425-26 (1999); VonHoldt, 175 Ill. 2d at 430-31; Redarowicz, 92 Ill. 2d at 183;

Petersen, 76 Ill. 2d at 39-40. The policy is supported by three concepts. First, purchasers of new homes "generally do not [have] the ability to determine whether the houses they have purchased contain latent defects." Bloomfield Club, 186 Ill. 2d at 425. Second, "[t]he purchaser needs this protection because, in most cases, the purchaser is making the largest single investment of his or her life and is usually relying upon the honesty and competence of the builder, who, unlike the typical purchaser, is in the business of building homes." Bloomfield Club, 186 Ill. 2d at 425. Third, "[i]f construction of a new house is defective, its repair costs should be borne by the responsible builder-vendor who created the latent defect." Redarowicz, 92 Ill. 2d at 183. These policy considerations result in the core principle of the implied warranty of habitability: builders are accountable for latent defects in residences that they construct. See Bloomfield Club, 186 Ill. 2d at 425.

Defendant observed in its motion to dismiss that every case since Petersen has dealt only with builder-vendors or developer-vendors who are involved in the actual sale of a new home, and it argued that the warranty therefore cannot apply in this case because defendant was merely a builder, not a builder-vendor. Defendant argued that plaintiff has a cause of action only against the developer who sold the condo units in the building. We find this argument unpersuasive. Our review of the long line of cases concerning the warranty confirms that the primary objective of the implied warranty of habitability has always been to hold builders themselves accountable for latent defects because they are in the best position to ensure that the residences they build are habitable and free of defects that unsophisticated home buyers are unable to detect. As our supreme court has stated, "[T]he basic rule governing the application of

7

the implied warranty of habitability has been as unwavering as the aforementioned policy considerations. This simple rule states, in essence, that the warranty is applicable against a lessor or <u>builder</u> of a residential unit where latent defects thereabout interfere with the inhabitant's reasonable expectation that the unit will be suitable for habitation." (Emphasis added.) <u>Bloomfield Club</u>, 186 Ill. 2d at 425-26.

Although the language of some cases refers to "builder-vendors," limiting application of the warranty to only those builders who are also vendors would defeat the warranty's policy goals of holding builders themselves accountable for latent defects in new homes and placing the costs of repair on the builders who created the defect. Moreover, defendant's reading of the cases is inconsistent with the nature of the warranty, which is not governed by contract law. While the warranty "has roots in the execution of the contract for sale," our supreme court has been clear that "it exists independently" of a sales contract and "[p]rivity of contract is not required." <u>Redarowicz</u>, 92 Ill. 2d at 183. Consequently, the mere fact that in this case defendant was not a builder-vendor and was not involved in the sale of the building to plaintiff is irrelevant to the application of the implied warranty of habitability.

Our review of the supreme court's cases on this subject and our consideration of the public policy behind the implied warranty of habitability confirm that the warranty applies to builders of residential homes regardless of whether they are involved in the sale of the home. Because defendant's status as a builder rather than a builder-vendor does not preclude an action for breach of the implied warranty of habitability, the trial court erred by dismissing the implied warranty of habitability count in plaintiff's complaint. In so finding, we express no opinion on

8

the merits of plaintiff's allegations, but hold only that plaintiff may maintain this particular cause of action against defendant.

We next examine plaintiff's contention that the trial court improperly dismissed the negligence count pursuant to the Moorman doctrine. In Moorman, the supreme court held that a "plaintiff cannot recover for solely economic loss under the tort theories of strict liability, negligence, and innocent misrepresentation." Moorman, 91 Ill. 2d at 91. Economic damages are " 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property ***' [citation]." Moorman, 91 Ill. 2d at 82. Plaintiff in this case alleged that defendant was negligent in constructing the building, and it sought damages for repair of the building and the individual units as well as associated costs. These damages are economic in nature and the Moorman doctrine must therefore be considered.

There are three exceptions to the Moorman doctrine: "(1) where the plaintiff sustained damage, i.e., personal injury or property damage, resulting from a sudden or dangerous occurrence [citation]; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false misrepresentation, i.e., fraud [citation]; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions [citation]." (Emphasis omitted.) In re Chicago Flood Litigation, 176 Ill. 2d 179, 199 (1997). Only the first of these exceptions is at issue in this case. In order to apply the "sudden or dangerous occurrence" exception and recover economic damages in negligence, (1) the economic damages

must result from "a sudden, dangerous, or calamitous event," and (2) the event must also cause "personal injury or property damage." In re Chicago Flood Litigation, 176 Ill. 2d at 200-01; see also Trans State Airlines v. Pratt & Whitney Canada, Inc., 177 Ill. 2d 21, 26-27 (1997).

The trial court held that the September 2008 storms were not a sudden or dangerous occurrence and that the exception consequently does not apply, barring plaintiff's negligence claim under the Moorman doctrine. Plaintiff argues on appeal that the trial court should have accepted the precedent of Mars for the proposition that the September 2008 storms were a sudden and dangerous occurrence. See Mars, 327 Ill. App. 3d at 353 (holding that a single thunderstorm was a sudden and dangerous occurrence). Plaintiff further argues that the second element of the exception is satisfied because plaintiff alleged that the leaks in the building damaged personal property of the unit owners and caused health problems.

We do not accept plaintiff's argument. Even if we were to agree with plaintiff that the September 2008 storms were a sudden or dangerous occurrence and that the leaks in the building resulted in personal injury or property damage, the exception cannot apply because the storms did not cause the damage. Both plaintiff's complaint and its brief on appeal concede that the leaks in the building were already present before the storms occurred and had caused "significant damage not only to the building itself but to other property contained in the individual units," and that the leaks "grew substantially worse" after the storms. If the leaks were present before the September 2008 storms and had already caused the damage, then it necessarily follows that the damage could not have been caused by the storms. Because the damage was not caused by the storms, it could not have been the result of a sudden or dangerous occurrence, and therefore

that exception to the <u>Moorman</u> doctrine cannot apply. We note that this finding rests on the lack of causation between the September 2008 storms and the damages that plaintiff alleges, and we therefore do not reach the questions of whether the September 2008 storms constituted a sudden or dangerous occurrence, or whether plaintiff adequately alleged personal or property damages in addition to its claims for economic damages.

Plaintiff argues in the alternative that the mold outbreak satisfies the elements of the exception because it constitutes a sudden and dangerous occurrence and it resulted in personal injury. Other courts have found that a sudden mold outbreak can qualify as a sudden or dangerous occurrence when it "manifests itself in a sudden and calamitous manner, damaging property and forcing the occupants of a home to flee or risk personal injury." <u>Mayer v. Chicago Mechanical Services, Inc.</u>, 398 Ill. App. 3d 1005, 1010 (2nd Dist. 2010); accord <u>Muirfield Village–Vernon Hills, LLC v. K. Reinke, Jr., & Co.</u>, 349 Ill. App. 3d 178, 194 (2nd Dist. 2004).

However, there are no allegations in the record before us that the individual unit owners in this case were forced out of their homes due to the mold. Moreover, even if we accepted that the mold infestation here constituted a sudden or dangerous occurrence, plaintiff has not alleged any corresponding injuries. We have examined the affidavits of the unit owners in the record and none of the affidavits allege any injury or damage from the mold. Although plaintiff alleges in its complaint and brief that there was an "increased risk of serious personal injury to the residents of the building, especially a newborn baby, due to their exposure to mold found within the walls of the units," there are no allegations of any actual injuries. This type of speculative allegation is insufficient to sustain a cause of action in tort. See <u>Washington Courte</u>

Condominium Ass'n–Four v. Washington-Golf Corp., 150 Ill. App. 3d 681, 687 (1986) (rejecting allegations of potential injury to a plaintiff's minor son from an allergic reaction to a mold infestation). Because there are no allegations that the mold caused any injuries, the mold infestation does not fall within the sudden or dangerous occurrence exception to the Moorman doctrine.

Based on plaintiff's own arguments, complaint, and affidavits, the property and personal injury damages alleged either were not the result of the 2008 storms or are speculative. We therefore find that the sudden or dangerous occurrence exception does not apply in this case. Because no exception applies, the plaintiff's negligence claim for economic damages is precluded by the Moorman doctrine. As a result, we hold that the trial court properly dismissed the negligence count of plaintiff's complaint.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's dismissal of the negligence court, but we reverse the trial court's dismissal of the implied warranty of habitability count and remand this case for further proceedings.

Affirmed in part and reversed in part; cause remanded.

CUNNINGHAM and KARNEZIS, JJ., concur.