# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*1324 W. Pratt Condominium Ass'n v. Platt Construction Group, Inc.*,
**2012 IL App (1st) 111474**

---

| | |
|---|---|
| Appellate Court Caption | 1324 W. PRATT CONDOMINIUM ASSOCIATION, Plaintiff-Appellant, v. PLATT CONSTRUCTION GROUP, INC., Defendant-Appellee (EZ Masonry, Inc., Defendant-Appellee and Cross-Appellant). |
| District & No. | First District, Fourth Division<br>Docket No. 1-11-1474 |
| Filed | June 21, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The contractual waiver of the warranty of habitability between a developer and the purchasers of individual condominium units did not extend to the general contractor and a subcontractor in an action by the condominium association alleging breach of the implied warranty of habitability due to faulty construction, nor did public policy support the extension of the waiver to either contractor. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-L-014415; the Hon. Ronald F. Bartkowitz, Judge, presiding. |
| Judgment | Reversed. |

| Counsel on Appeal | Robert W. Brunner, of Law Office of Robert W. Brunner, of Chicago, for appellant. |
|---|---|
| | Joseph A. Bosco and David J. Berault, both of LaRose & Bosco, Ltd., and Margaret A. Gisch, of Golan & Christie, both of Chicago, for appellee. |
| | Joseph A. Bosco and Brian R. Kusper, both of LaRose & Bosco, Ltd., of Chicago, for appellee and cross-appellant EZ Masonry, Inc. |
| Panel | JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion. Presiding Justice Lavin and Justice Sterba concurred in the judgment and opinion. |

**OPINION**

¶ 1 This is an appeal from the circuit court's order granting a motion to dismiss pursuant to section 2-619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2008)) in favor of the defendant, Platt Construction Group, Inc. (hereinafter, Platt), and the defendant, cross-appellant, EZ Masonry, Inc. (hereinafter, EZ Masonry), in an action by the plaintiff, 1324 W. Pratt Condominium Association (hereinafter the condominium association), to recover damages arising from faulty construction of a residential building under a breach of the implied warranty of habitability claim. The condominium association contends that the circuit court erred in finding that it disclaimed the implied warranty of habitability as to Platt and EZ Masonry and asks that we find the warranty applicable to both of the defendants. For the reasons that follow, we agree with the plaintiff and reverse the judgment of the circuit court.

¶ 2                                    I. BACKGROUND

¶ 3 The record reveals the following relevant and undisputed facts. Between 2004 and 2005, the developer, 6801 N. Wayne LLC (hereinafter, Wayne), engaged in the construction of an eight-unit residential building located at 1324 W. Pratt Boulevard in Chicago, Illinois (hereinafter, the building). In order to construct the building, Wayne entered into a contract with Platt, under which Platt was hired to act as the general contractor for the project and was responsible for the overall construction of the building. In turn, Platt subcontracted the masonry work on the building to EZ Masonry.

¶ 4 After Platt completed the building in March 2005, Wayne sold the individual eight units as condominiums, by entering into a real estate contract with each of the individual

condominium unit owners. Platt and EZ Masonry never entered into any direct contracts with the owners. The record contains a copy of what the parties agree is a representative contract of all the contracts entered into by Wayne with the individual unit owners. Paragraph 10 of that contract is entitled "Homeowner's Limited Warranty" and provides the individual unit owners with a one-year limited warranty for certain structural components in the units. Under the contract this one-year limited warranty expired a year after the date of closing or sometime in March 2006. Section (b) of paragraph 10, however, explicitly provides a disclaimer of the implied warranty of habitability. That section states in pertinent part:

"**(b) IMPLIED WARRANTY OF HABITABILITY**

**Illinois law provides that every contract for construction of a new home, as here, carries with it a warranty that when completed, the new home will be free of defects and will be fit for its intended use as a home. This law further provides that this Implied Warranty does not have to be in writing to be a part of the contract and it covers not only structural and mechanical defects such as may be found in the foundation, roof, masonry, heating, electrical and plumbing, but it also covers any defect in workmanship which may not easily be seen by the Purchaser. However, the law also provides that Seller and Purchaser may agree in writing, as here, that this Implied Warranty is not included as part of their particular contract.**

(c) WAIVER-DISCLAIMER. THE SELLER HEREBY DISCLAIMS AND THE PURCHASER HEREBY WAIVES THE IMPLIED WARRANTY OF HABITABILITY DESCRIBED IN PARAGRAPH 10(B) ABOVE AND THEY ACKNOWLEDGE, UNDERSTAND AND AGREE THAT IT IS NOT PART OF THE CONTRACT.

(d) Effective [*sic*] and Consequences of this Waiver-Disclaimer. Purchaser acknowledges and understands that if a dispute arises with Seller and the dispute results in a lawsuit, Purchaser will not be able to rely on the Implied Warranty of Habitability described above, as a basis for suing the Seller or as a basis of a defense if Seller sues the Purchaser." (Emphases in original.)

¶ 5    For reasons not disclosed in the record, Wayne was involuntarily dissolved on November 28, 2005. Soon thereafter, the unit owners discovered water leaks around windows, doors, ceilings and vents in their units and common areas of the building.

¶ 6    The owners of the individual units formed the plaintiff condominium association in order to represent their collective interests. On December 31, 2008, the condominium association filed its original complaint against Wayne, Platt, and a roofing contractor (Kelly Roofing, Inc.), which is not a party to the instant appeal. The complaint alleged that leaks in the building had damaged not only the physical structure of the building but also the unit owners' personal property, such as furniture and books. Moreover, the complaint alleged that the water seeped into the walls, causing mold to grow throughout the building and resulting in medical problems to some of the unit owners, such as worsening asthma and flu-like symptoms. The condominium association retained a property inspector, who determined that the leaks were due to a faulty roof and other construction anomalies.

¶ 7    According to the complaint, the condominium association sent a letter to Platt advising it of the leaks. Based on the property inspector's finding that Platt was responsible for the

defects, the condominium association requested that Platt repair the defects.[1] Platt never responded to the letter. The condominium association subsequently attempted to contact Platt on numerous occasions, again requesting that Platt repair the defects but Platt continued to ignore these requests.

¶ 8 The complaint further alleged that in September 2008, the Chicago area experienced a series of severe rainstorms, which substantially worsened the leaks in the building and exacerbated the mold problem. As a result, the condominium association incurred significant costs in repairing the leaks and removing the mold from the building.

¶ 9 The original complaint asserted numerous causes of action related to the allegedly faulty construction of the building. Four counts were directed against Platt, alleging: (1) negligence; (2) breach of the implied warranty of good workmanship; (3) breach of the implied warranty of habitability: and (4) breach of contract under a third-party beneficiary theory. The condominium association sought damages for repairs to the building itself, common areas, and individual units, as well as inspection and assessment costs for engineering and other construction expenses.

¶ 10 On April 7, 2009, Platt filed a motion to dismiss pursuant to section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2008)) alleging that the original complaint was confusing and overly broad and failed to contain a "plain and concise statement" of the cause of action as required by section 2-603 of the Code (735 ILCS 5/2-603 (West 2008)). In response, the condominium association filed its first amended complaint, reasserting its original allegations in a more orderly fashion.

¶ 11 On June 9, 2009, Platt filed a motion to dismiss all four counts against it under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2008)). Among other things, Platt argued that it could not be held liable under an implied warranty of habitability theory because the implied warranty applies to "builder-vendors," *i.e.*, builders that not only construct a residential building but that are also involved in the sale of the residence to a purchaser. The condominium association responded that the implied warranty of habitability has never been limited to only "builder-vendors" and that the policies underlying the warranty apply equally to mere builders.

¶ 12 The circuit court agreed with Platt and granted its motion to dismiss on September 11, 2009. The condominium association's subsequent motion to reconsider was denied on December 8, 2009.

¶ 13 On December 14, 2009, the condominium association filed its second amended complaint, raising the same four counts it had alleged in its first amended complaint, but adding several new defendants, including, relevant to this appeal, the masonry subcontractor, EZ Masonry. On this same date, the condominium association also moved for entry of final judgment on the dismissal of the counts against Platt entered on September 11, 2009. Pursuant to Illinois Supreme Court Rule 304(a) (eff. Jan. 1, 2006), the circuit court entered an order of final judgment on January 6, 2010, noting that there was no just reason to delay the appeal of the dismissal. The condominium association immediately appealed.

---

[1]A copy of this letter is attached as an exhibit to the complaint.

¶ 14 While the cause was pending before the appellate court, on June 17, 2010, EZ Masonry filed its motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2008)), but that motion was stayed, pending a ruling from the appellate court with respect to the September 11, 2009, dismissal of the action against Platt.

¶ 15 On September 28, 2010, this appellate court issued its ruling in the cause, *inter alia*, reversing the trial court's dismissal of the condominium association's implied warranty of habitability claim against Platt and remanding the cause to the circuit court on that issue. See *1324 W. Pratt Condominium Ass'n v. Platt Construction Group, Inc.*, 404 Ill. App. 3d 611 (2010). In doing so, the appellate court specifically held that "the warranty applies to builders of residential homes regardless of whether they are involved in the sale of the home." *1324 W. Pratt Condominium Ass'n*, 404 Ill. App. 3d at 618. The court went on to note that it "express[ed] no opinion on the merits of [the condominium association's] allegations, but [held] only that [the condominium association] may maintain this particular cause of action against [Platt]." *1324 W. Pratt Condominium Ass'n*, 404 Ill. App. 3d at 618.

¶ 16 On December 20, 2010, the condominium association filed its third amended complaint alleging only a breach of the implied warranty of habitability claim against, *inter alia*, Wayne, Platt and EZ Masonry.

¶ 17 On January 11, 2011, EZ Masonry filed its second motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2008)), arguing that while the general contractor (Platt) was solvent, it was improper to bring a claim for the breach of the implied warranty of habitability against a subcontractor, such as EZ Masonry. In support of this contention, EZ Masonry cited to *Minton v. The Richards Group of Chicago*, 116 Ill. App. 3d 852 (1983).

¶ 18 On January 31, 2011, Platt filed a motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619(a)(9) (West 2008)), this time asserting that the individual condominium owners had explicitly waived the implied warranty of habitability in their real estate contracts to purchase the condominium units. In support of this contention, Platt attached a copy of the relevant sections of a sample contract between Wayne and the individual condominium owners, which included an explicit disclaimer of the implied warranty of habitability.[2] Platt argued that since the warranty was waived as to Wayne (the vendor), the same doctrine was waived with respect to Platt (the general contractor) and EZ Masonry (the subcontractor). EZ Masonry orally joined Platt's motion to dismiss.

¶ 19 On May 19, 2011, the circuit court granted Platt and EZ Masonry's joint section 2-619 motion to dismiss (735 ILCS 5/2-619(a)(9) (West 2008)) solely based upon waiver of the implied warranty of habitability. In doing so, the court specifically discounted EZ Masonry's claim that while Platt was solvent, the condominium association could not go forward with its claim against EZ Masonry and denied EZ Masonry's motion to dismiss on this ground. In a written order explaining its ruling the circuit court stated:

"1. The First District's decision in *1324 W. Pratt Condominium Association v. Platt Construction Group, Inc.*, 404 Ill. App. 3d 611 (2010) has modified *Minton v. Richards*

---

[2]The relevant provisions of this sample real estate contract are attached as exhibits to the condominium association's third amended complaint.

*Group of Chicago*, 116 Ill. App. 3d 852 (1983) and has extended the implied warranty of habitability to subcontractors without the need to first show that the purchaser has no recourse to the builder and/or vendor. Correspondingly, [p]laintiff [the condominium association] may assert its implied warranty of habitability claims against EZ Masonry without requiring a showing of insolvency on behalf of Platt Construction;

2. The waiver of the implied warranty of habitability clause in the real estate contract between the developer [Wayne] and plaintiff unit owners attached *** to plaintiff's third amended complaint meets the standards regarding waiver set forth in *Board of Managers of Village Centre Condominium Association v. Wilmette Partners*, 198 Ill. 2d 132 (2001) and is therefore valid;

3. The waiver of implied warranty of habitability clause found in the real estate contract ***, although in a contract with only the seller [Wayne], extends to other entities who may be liable under a theory of breach of implied warranty of habitability, including the general contractor, Platt *** and subcontractor EZ Masonry; and

4. The waiver of implied warranty of habitability clause found in the real estate contract *** applies to claims for defects in the common areas of the building as well as to the individual units themselves."

The condominium association now appeals the circuit court's dismissal of its claim pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2008)).

¶ 20                                                    II. ANALYSIS

¶ 21        We initially note that our review of the circuit court's denial of a motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2008)) is *de novo*. See *Coady v. Harpo, Inc.*, 308 Ill. App. 3d 153, 158-59 (1999). When reviewing the denial of such a motion, we must accept as true all well-pleaded facts contained in the complaint and in any uncontradicted affidavits attached to the motion. *Coady*, 308 Ill. App. 3d at 158-59. The question on review is " 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 110 (1999) (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993)).

¶ 22        On appeal, the condominium association first contends that the circuit court erred when it found that the disclaimer of the implied warranty of habitability applied to both Platt and EZ Masonry. The condominium association points out that according to the plain language of the disclaimer, that disclaimer applies only to the vendor (seller), Wayne, and not to any other party. According to the condominium association, Platt and EZ Masonry were never part of any real estate contracts entered into between Wayne and the individual unit owners, and never themselves entered into any other contract with the owners. The condominium association further argues that the circuit court's ruling, extending the disclaimer to Platt and EZ Masonry, is contrary to the public policy behind the implied warranty of habitability, which has always been to protect purchasers of new homes from latent defects created by faulty construction. For the reasons that follow, we agree.

¶ 23        We begin by noting that the implied warranty of habitability is a "creature of public

-6-

policy" that was designed "to protect purchasers of new houses upon discovery of latent defects in their homes." *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 183 (1982). Historically, the rule of *caveat emptor* governed sales of real property and buyers could only rely on contract law in order to hold builders liable for defects in the construction of new homes. See *Redarowicz*, 92 Ill. 2d at 180. This rule remained unchanged in this country until 1957 when the implied warranty of habitability was first applied. See *Redarowicz*, 92 Ill. 2d at 180 (citing *Vanderschrier v. Aaron*, 140 N.E.2d 819 (Ohio Ct. App. 1957)).

¶ 24    The Illinois Supreme Court first recognized the warranty of habitability in the landlord-tenant context in *Jack Spring, Inc. v. Little*, 50 Ill. 2d 351 (1972), and later expanded the warranty to the sale of new homes in *Petersen v. Hubschman Construction Co.*, 76 Ill. 2d 31 (1979). Our supreme court has articulated a threefold public policy justifying the application of the implied warranty of habitability. See *Board of Directors of Bloomfield Club Recreation Ass'n v. The Hoffman Group, Inc.*, 186 Ill. 2d 419, 425-26 (1999); *VonHoldt v. Barba & Barba Construction, Inc.*, 175 Ill. 2d 426, 430-31 (1997); *Redarowicz*, 92 Ill. 2d at 183; *Petersen*, 76 Ill. 2d at 39-40. First, purchasers of new homes "generally do not [have] the ability to determine whether the houses they have purchased contain latent defects." *Bloomfield Club*, 186 Ill. 2d at 425. Second, "[t]he purchaser needs this protection because, in most cases, [he or she] is making the largest single investment of his or her life and is usually relying upon the honesty and competence of the builder, who, unlike the typical purchaser, is in the business of building homes." *Bloomfield Club*, 186 Ill. 2d at 425. Third, "[i]f construction of a new house is defective, its repair costs should be borne by the responsible builder-vendor who created the latent defect." *Redarowicz*, 92 Ill. 2d at 183.

¶ 25    On the basis of this rationale, and since its initial acceptance in Illinois, the warranty has been steadily expanded over the years in order to serve the underlying public policy of protecting new homeowners and holding vendor-builders accountable for latent defects in residences that they construct. See, *e.g.*, *Redarowicz*, 92 Ill. 2d at 183 (expanding the class of plaintiffs with standing to sue for a violation of the implied warranty of habitability to successive purchasers); *VonHoldt v. Barba & Barba Construction, Inc.*, 175 Ill. 2d 426 (1997) (expanding the type of structures covered by the warranty to include new additions to existing buildings); *McClure v. Sennstrom*, 267 Ill. App. 3d 277 (1994) (expanding the warranty of habitability to include a house built on a preexisting foundation); *Briarcliffe West Townhouse Owners Ass'n v. Wiseman Construction Co.*, 118 Ill. App. 3d 163 (1983) (expanding the warranty to a vacant common lot of a townhouse development); *Herlihy v. Dunbar Builders Corp.*, 92 Ill. App. 3d 310 (1980) (expanding the warranty to apply to common elements of condominiums); *Park v. Sohn*, 89 Ill. 2d 453 (1982) (expanding the class of potential defendants to include a builder-vendor who is not in the business of building); *Hefler v. Wright*, 121 Ill. App. 3d 739 (1984) (expanding the class of potential defendants to include a builder who erected a house manufactured by another party); *Minton v. The Richards Group of Chicago*, 116 Ill. App. 3d 852 (1983) (extending the warranty to subcontractors where a builder-vendor is insolvent and the purchaser has no available recourse against it); *Tassan v. United Development Co.*, 88 Ill. App. 3d 581 (1980) (extending the warranty to developers).

¶ 26    In the original decision in this case, we extended the implied warranty of habitability to

apply to builders who are not vendors of the new homes. See *1324 W. Pratt Condominium Ass'n*, 404 Ill. App. 3d at 618 (hereinafter, *Pratt I*) ("the warranty applies to builders of residential homes regardless of whether they are involved in the sale of the home"). In doing so, we explained that the underlying policy of the warranty was to protect the homeowners and to apportion responsibility for latent defects in the homes to the party responsible for creating them, *i.e.*, the builder. As we stated, "[t]hese policy considerations result in the core principle of the implied warranty of habitability: builders are accountable for latent defects in residences that they construct." *1324 W. Pratt Condominium Ass'n*, 404 Ill. App. 3d at 617 (citing *Bloomfield Club*, 186 Ill. 2d at 425). We, therefore, found that the condominium association could proceed against Platt, even though Platt had merely been the builder, *i.e.* the general contractor, and not the seller/vendor of the individual condominium units. *1324 W. Pratt Condominium Ass'n*, 404 Ill. App. 3d at 617. Under our decision in *Pratt I*, there can be no doubt that the implied warranty of habitability as such extends to and is applicable to Platt. See *1324 W. Pratt Condominium Ass'n*, 404 Ill. App. 3d at 617.

¶ 27    Nevertheless, in the present case, the circuit court found that the warranty does not apply to Platt because of the disclaimer of the warranty contained in the contract between Wayne and the individual condominium owners. After a review of the disclaimer, however, we must disagree with the circuit court.

¶ 28    We begin by noting that our supreme court has specifically recognized that "a knowing disclaimer of the implied warranty of habitability is not against the public policy of this state." *Petersen*, 76 Ill. 2d at 43. However, our supreme court has also made clear that the burden of establishing a knowing waiver of the warranty rests on the builder-vendor and that any such disclaimer must be "strictly construed against the builder-vendor." *Petersen*, 76 Ill. 2d at 43. As our supreme court in *Petersen* explained:

" '[O]ne seeking the benefit of such a disclaimer must not only show a conspicuous provision which fully discloses the consequences of its inclusion but also that such was in fact the agreement reached. The heavy burden thus placed upon the builder is completely justified, for by his assertion of the disclaimer he is seeking to show that the buyer has relinquished protection afforded him by public policy. A knowing waiver of this protection will not be readily implied.' *** [Citation.]" (Emphasis omitted.) *Petersen*, 76 Ill. 2d at 43.

¶ 29    Cases subsequent to *Petersen*, continue to follow this high standard and hold that the burden for waiver of an implied warranty by way of a disclaimer will be met only where: "(1) [the disclaimer] is a conspicuous provision (2) which fully discloses the consequences of its inclusion (3) that was, in fact, the agreement of the parties." *Board of Managers of Chestnut Hills Condominium Ass'n v. Pasquinelli, Inc.*, 354 Ill. App. 3d 749, 758 (2004); see also *Herlihy*, 92 Ill. App. 3d at 317; *Board of Managers of the Village Centre Condominium Ass'n v. Wilmette Partners*, 198 Ill. 2d 132, 141 (2001) (holding that in order to disclaim the implied warranty of habitability, the words "implied warranty of habitability" must be used in the disclaimer and brought to the purchasers' attention); *Colsant v. Goldschmidt*, 97 Ill. App. 3d 53, 56 (1981) ("A disclaimer does not negate an implied warranty unless it is brought to the attention of the buyer and agreed to by him.").

¶ 30    In the present case, the plain language of the contract states that the individual unit owners disclaim the implied warranty of habitability as to the seller, Wayne. As the contract clearly states:

"(b) IMPLIED WARRANTY OF HABITABILITY

*** [T]he law *** provides that *Seller* and *Purchaser* may agree in writing, as here, that this Implied Warranty is not included as part of their particular contract.

(c) WAIVER-DISCLAIMER. THE *SELLER* HEREBY DISCLAIMS AND THE *PURCHASER* HEREBY WAIVES THE IMPLIED WARRANTY OF HABITABILITY DESCRIBED IN PARAGRAPH 10(B) ABOVE AND THEY ACKNOWLEDGE, UNDERSTAND AND AGREE THAT IT IS NOT PART OF THE CONTRACT.

(d) Effective [*sic*] and Consequences of this Waiver-Disclaimer. *Purchaser* acknowledges and understands that if a dispute arises with *Seller* and the dispute results in a lawsuit, *Purchaser* will not be able to rely on the Implied Warranty of Habitability described above, as a basis for suing the *Seller* or as a basis of a defense if *Seller* sues the Purchaser." (Emphases omitted and added.)

¶ 31    "The basic rules of contract interpretation are well settled." *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). In construing a contract, the primary objective is to give effect to the intent of the parties. *Thompson*, 241 Ill. 2d at 441; see also *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). If the language of a contract is clear and unambiguous, the intent of the parties must be determined solely from the language of the contract itself, which must be given its plain, ordinary and popular meaning. *Thompson*, 241 Ill. 2d at 441. Where the words of the contract are clear, the contract should be enforced as written. *Thompson*, 241 Ill. 2d at 441; *Virginia Surety Co.*, 224 Ill. 2d at 556; see also *Premier Title Co. v. Donahue*, 328 Ill. App. 3d 161, 164 (2002).

¶ 32    Here, the disclaimer provision could not be clearer: it only applies to the seller, Wayne, and not to any other party, including Platt or EZ Masonry. Even though the disclaimer provision is conspicuous, and discloses the consequences as to the relationship between the seller (Wayne) and the individual condominium purchasers with respect to the implied warranty of habitability, there is nothing whatsoever in the contract to indicate that the individual unit owners agreed to disclaim the warranty as to Platt or EZ Masonry, or that they were even aware of the possible consequences of disclaiming the warranty as to these two parties. See *Colsant*, 97 Ill. App. 3d at 56 ("A disclaimer does not negate an implied warranty unless it is brought to the attention of the buyer and agreed to by him."); *Pasquinelli*, 354 Ill. App. 3d at 758 (the burden of waiver is met only where "(1) [the disclaimer is] a conspicuous provision (2) which fully discloses the consequences of its inclusion (3) *that was, in fact, the agreement of the parties*" (emphasis added)). Since the public policy behind the implied warranty of habitability is to protect homeowners and to construe disclaimers strictly against builders-vendors (*Petersen*, 76 Ill. 2d at 43), we see no reason why, under the plain language of the aforementioned disclaimer provision, we should attempt to circumvent the clear and unambiguous intent of the parties and extend the disclaimer to include parties other than the seller, Wayne (*Thompson*, 241 Ill. 2d at 441). Accordingly, we hold that, contrary to the circuit court's interpretation, the disclaimer does not apply to either Platt or EZ Masonry.

¶ 33    In that respect, we reject the circuit court's apparent reliance on our earlier decision in *Pratt I*. See *1324 W. Pratt Condominium Ass'n*, 404 Ill. App. 3d at 618. It appears that the circuit court reasoned that because in our decision in *Pratt I*, we extended the implied warranty of habitability to apply to builders that are also not vendors, we should correspondingly extend the disclaimer of any such warranty to include nonvendor builders, *i.e.* Platt. However, as already noted above, while the implied warranty of habitability is a creation of public policy, any disclaimer of such a warranty is governed by contract law. Moreover, the circuit court's reading of *Pratt I* would contradict the public policy behind the implied warranty of habitability, which has always been to protect homeowners, as well as our supreme court's direct mandate that we interpret any disclaimers of such warranties strictly against the builder. See *Petersen*, 76 Ill. 2d at 43 (" '[O]ne seeking the benefit of such a disclaimer must not only show a conspicuous provision which fully discloses the consequences of its inclusion but also that such was in fact the agreement reached. The heavy burden thus placed upon the builder is completely justified, for by his assertion of the disclaimer he is seeking to show that the buyer has relinquished protection afforded him by public policy. A knowing waiver of this protection will not be readily implied.' *** [Citation.]" (Emphasis omitted.)).

¶ 34    Since we conclude that the disclaimer protects neither Platt nor EZ Masonry, we hold that the circuit court erred in granting their joint section 2-619 motion to dismiss on this basis (735 ILCS 5/2-619 (West 2008)). As Platt's motion to dismiss was based solely on this ground, the condominium association may proceed with its cause of action against it.

¶ 35    We must next determine, however, whether the condominium association may also proceed against EZ Masonry. Before the circuit court, and again in its cross-appeal, EZ Masonry argues that the condominium association may not assert its implied warranty of habitability claim against it without first showing that Platt is insolvent. In support of this contention, EZ Masonry relies on the decision of our appellate court in *Minton v. The Richards Group of Chicago*, 116 Ill. App. 3d 852 (1983). On the other hand, the condominium association argues that *Minton* was modified by our original decision in *Pratt I*, which, it claims, extended the implied warranty of habitability to subcontractors, regardless of the solvency of the developer-builder. For the reasons that follow, we disagree with the condominium association and reverse the finding of the circuit court with respect to this issue.

¶ 36    In *Minton*, the builder-vendor from whom the plaintiffs had purchased their home had since dissolved as an entity. *Minton*, 116 Ill. App. 3d at 853. Prior to the dissolution, the plaintiffs had demanded that the builder-vendor correct the peeling paint on the outside of their home. *Minton*, 116 Ill. App. 3d at 853. The builder-vendor made no repairs, and when it dissolved, the plaintiffs pursued their breach of the implied warranty of habitability claim against the responsible subcontractor. *Minton*, 116 Ill. App. 3d at 853. The circuit court dismissed the plaintiffs' claim against the subcontractor and the plaintiffs appealed, arguing that the implied warranty of habitability should be applied to a subcontractor of a builder-vendor where the builder-vendor is insolvent. *Minton*, 116 Ill. App. 3d at 854. The court in *Minton* agreed with the plaintiffs and held that "where the innocent purchaser has no recourse to the builder-vendor and has sustained loss due to the faulty and latent defect in their new

home caused by the subcontractor, the warranty of habitability applies to such subcontractor." *Minton*, 116 Ill. App. 3d at 855. In coming to this decision, the court reasoned:

> "Purchasers from a builder-vendor depend upon his ability to construct and sell a home of sound structure and his ability to hire subcontractors capable of building a home of sound structure. The plaintiffs here had no control over the choice of [the builder-vendor] to paint the eaves and windows of their home, and [the builder-vendor] was in the better position to know which subcontractor could perform the work adequately." *Minton*, 116 Ill. App. 3d at 854.

Noting that the purpose of the policy was to "protect innocent purchasers," the court concluded that the plaintiffs could proceed against a subcontractor where the builder-vendor was insolvent. *Minton*, 116 Ill. App. 3d at 855.

¶ 37    Several years after *Minton*, in *Washington Courte Condominium Ass'n-Four v. Washington-Golf Corp.*, 150 Ill. App. 3d 681 (1986), our appellate court revisited the issue of whether the implied warranty of habitability can be extended to subcontractors. In that case, the record rebutted the plaintiffs' assertion that the builder-vendor was insolvent, and the court was faced with determining whether the warranty could be applied to a subcontractor even where the builder-developer was solvent. *Washington Courte*, 150 Ill. App. 3d at 689. The appellate court held that the warranty could not be extended to the subcontractor, where the builder-vendor was still solvent. *Washington Courte*, 150 Ill. App. 3d at 690. The court explained that the *Minton* decision did nothing more than "carve[ ] out a[ ] [narrow] exception to the exclusion of subcontractors," limited to situations where the builder-vendor is insolvent. *Washington Courte*, 150 Ill. App. 3d at 688-89.

¶ 38    In doing so, the appellate court rejected the plaintiffs' reliance on our supreme court's decision in *Redarowicz*. See *Washington Courte*, 150 Ill. App. 3d at 689-90. In that case, the supreme court recognized that a subsequent purchaser needs the same protections as does an initial purchaser against latent defects in the construction of a residence. *Redarowicz*, 92 Ill. 2d at 183. Accordingly, the *Redarowicz* court found that privity of contract was not required in a breach of warranty of habitability action and held that the warranty extended to subsequent purchasers. *Redarowicz*, 92 Ill. 2d at 183. The plaintiffs in *Washington Courte* used the "lack of privity" language of *Redarowicz* to argue that that decision expanded the scope of potential defendants in a breach of warranty of habitability to include all subcontractors. *Washington Courte*, 150 Ill. App. 3d at 689-90. The appellate court disagreed, holding that *Redarowicz* was "specifically limited to extending the cause of action to subsequent purchasers." *Washington Courte*, 150 Ill. App. 3d at 689. As the court explained:

> "Although *Redarowicz* extended the availability of the cause of action to include subsequent purchasers, it did not extend the scope of possible defendants beyond the builder/vendor or builder/developer to include subcontractors. The court expressly stated that the rationale for extending the cause of action to subsequent purchasers was to assure that builder/vendors were held accountable and could not escape liability simply because the initial purchaser had sold the home before the latent defects became patent defects.

-11-

The question of extending the scope of defendants to include subcontractors was not before the *Redarowicz* court." *Washington Courte*, 150 Ill. App. 3d at 688.

Accordingly, the *Washington Courte* court concluded that nothing in *Redarewicz* extended the scope of *Minton* to subcontractors, whose builders-developers were still solvent. *Washington Courte*, 150 Ill. App. 3d at 688-89.

¶ 39    In the present case, the seller, Wayne, is insolvent, but the general contractor-builder, Platt, is not. Accordingly, applying the rationale of *Minton* and *Washington Courte* to the facts of this case, we are compelled to conclude that the condominium association cannot proceed against the subcontractor, EZ Masonry, while it still has recourse against Platt.

¶ 40    In coming to this conclusion, we reject the condominium association's reliance on our original decision in *Pratt I*. See *1324 W. Pratt Condominium Ass'n*, 404 Ill. App. 3d at 617. The condominium association attempts to argue that that decision modified and extended *Minton* to include all subcontractors, regardless of the solvency of the builder-vendor. We strongly disagree. Our original decision in *Pratt I* nowhere discussed or even considered the applicability of the implied warranty of habitability to subcontractors. Rather, as already articulated above, the decision centered only on the applicability of that warranty to builders who are also not vendors. See *1324 W. Pratt Condominium Ass'n*, 404 Ill. App. 3d at 617. In extending the warranty to such builders, we described the history of the warranty of habitability in our state, and merely listed the *Minton* decision as one among many ways Illinois courts have expanded the doctrine. See *1324 W. Pratt Condominium Ass'n*, 404 Ill. App. 3d at 616. We did so without explaining the rationale of why the warranty was extended to include the particular defendants. See *1324 W. Pratt Condominium Ass'n*, 404 Ill. App. 3d at 616 ("the class of potential defendants has been expanded. See, *e.g.*, *Park v. Sohn*, 89 Ill. 2d 453 (builder-vendor need not be in the business of building); *Hefler v. Wright*, 121 Ill. App. 3d 739 (1984) (builder who erected house manufactured by another party); *Minton v. The Richards Group of Chicago*, 116 Ill. App. 3d 852 (1983) (subcontractors); *Tassan v. United Development Co.*, 88 Ill. App. 3d 581 (1980) (developer)"). More importantly, aside from the aforementioned brief and singular citation to *Minton*, we never discussed the holding, rationale, or viability of that decision. As such, our intent was not to expand or overrule *Minton*, which to this day remains good law in this state. See *Washington Courte*, 150 Ill. App. 3d at 688 (citing *Minton*, 116 Ill. App. 3d at 855).

¶ 41                                    III. CONCLUSION

¶ 42    For all of the aforementioned reasons, we conclude that the condominium association may proceed with its cause action against Platt, but may not proceed against EZ Masonry, so long as Platt is solvent. We, therefore, reverse the judgment of the circuit court.

¶ 43    Reversed.